### SAMUEL HUBBARD *vs*. ISRAEL DEWEY.

It is the duty of an officer levying an execution on real estate, to procure such execution and his return to be recorded, both in the office of the town clerk of the town in which the estate is situate, and also in the office of the magistrate or clerk of the court, whence the same issued. And a record of the original execution and return in both offices is necessary, to perfect the title in the creditor; but if an officer levying and certifying his return, should neglect to procure the recording, and the records should be regularly made through the procuration of another, probably the levy would be held sufficient.

*Quaere.*—If the officer's certifying in his return that he had caused the execution and return to be recorded, would be *prima facie* evidence of the fact.

The respective certificates of the town clerk and magistrate or clerk of the court, upon the execution, that they have recorded it, are *prima facie* evidence of its being recorded, liable, however, to be rebutted, and the levy destroyed, by the fact of a fatal variance between the execution and return, and the record thereof actually made; of which variance a duly certified copy of the record (compared with the original) would be the proof.

*Held*, That a certified copy from the town clerk's records of an execution and return, was sufficient evidence of the original being there recorded, notwithstanding the officer has certified in his return that he had left a true and attested *copy* thereof in such office:

MOTION by the plaintiff, that the judgment in this case be reversed, and for a new trial, founded on exceptions taken at the trial below.

The motion was argued by *O. H. Smith* and *Wm. Upham*, for the plaintiff, and by *N. Baylies*, for the defendant.

The facts in the case, and the opinions of the county court to which exceptions were taken, will sufficiently appear from the opinion of this Court, which was pronounced by

HUTCHINSON, J. This is an action on the case against the defendant, setting forth that he, as constable of *Berlin*, levied an execution in favour of the plaintiff, on land, and neglected to cause the execution and his return to be recorded. The cause was tried in the county court upon the general issue; and the decision of the county court upon papers presented in evidence, is now to be revised, upon the exceptions taken at the trial.

The copies of the execution and the defendant's return of his levy, taken from the clerk of the court where the same were returned for record, and from the town clerk's office in Berlin, where the lands lie, are made a part of the case.----And, by inspection, it appears that the defendant stated in his return, that he had delivered a true and attested copy of said execution, with his return thereon endorsed, to the clerk of the county

court for said county of Washington, and a like true and at-
tested copy to the town clerk of the town of Berlin, aforesaid.
This appears in both copies thus produced : in fact, they are
alike throughout as to the execution and return.   It appears by
the case, that the county court charged the jury, that these co-
pies, from the several offices, showed a sufficient recording by
the procurement of the defendant.   Exception was taken to
this charge.

Upon reviewing this charge, two questions arise :

1st.  Was it the duty of the officer to procure this recording to
be done ?   For, if it were not his duty, he is not liable, even
though it were not done.

2d.  Does it appear from these copies that the record was
made as the statute requires?

The court charged for the plaintiff upon said first point, and
no exception was taken.   This is now deemed correct.   The
statute, to be sure, does not expressly say that the officer shall
cause this recording to be done.   The words of the statute
about the recording, are these :---"And all executions extended
and levied upon any houses, lands or tenements, as aforesaid,
with the return of the officer thereon, being recorded in the
records of lands in the town in which such houses, lands or
tenements are situate, or in the office wherein deeds respecting
the same are by law to be recorded, and also returned into the
office of the clerk of the court or justice of the peace from
which such execution issued, and there recorded, shall, as
against such debtor, &c. make good title to such creditor, &c."

When we are considering whose duty it is to take upon him
the trouble of procuring the execution and return to be record-
ed in the two offices, it is proper to notice who has it in custo-
dy at the time it should be recorded.   The officer has it in his
possession when he has completed his return ready for record-
ing ; and it should be recorded in the town clerk's office be-
fore it is returned to the county clerk's office, because, when
returned there, it remains, and no person has any right to car-
ry it thence, any more than they might any other original pa-
per.   Furthermore, another statute provides, that the clerks
shall receive certain fees for this recording, which are to be col-
lected and paid by the officer who makes the levy.   Hence the
proper course is for the officer to make his levy correct, and
make his return complete, ready for record---then procure the
town clerk to record it, and pay his fees for recording ;---then
return the execution to the county clerk; and procure him to
record it, and pay his fees.

Should a question arise about the validity of a levy, because
the recording, though perfectly regular in itself, was not thus
procured by the officer, we should be unwilling to suppose its
validity doubtful.---In this we suppose the levy correct, and the
return of the levy written and signed showing a complete and
regular levy.   A case might exist, in which an officer, having
completed his return ready for recording  suddenly dies or ab-

40

Washington,
February,
1827.

Hubbard
vs.
Dewoy..

sconds, leaving the execution and his return thereon upon the table.—In such a case, if the creditor himself, or any friend to the officer, or even any stranger, should procure the regular recording in both offices, it seems the levy would then become complete, and vest the title in the creditor. But the Court consider the recording essential to complete the title; and if it is not done as it ought to be, and the creditor suffers an injury from the neglect, the officer is liable to make good such creditor for the injury thus sustained.

But, in the present case, whatever recording was done, was procured by the defendant; and this leads to the second question, whether this, as it appears, is a sufficient recording to vest the title in the plaintiff? We are disposed to consider this, in the first place, as if it were a new question, and then notice the decisions that are urged upon us as authorities.

In viewing this as a question newly raised, we may notice what would seem the most natural and convenient *prima facie* evidence of such recording as the law requires, and what must be resorted to as conclusive. The most natural *prima facie* evidence of such recording, is, a certificate of each clerk upon the execution, by him signed, that he has recorded it, according to the usual entries thus made upon deeds by the several town clerks. This execution has such a certificate from the county clerk, but none from the town clerk.

But it has been urged, that it ought to appear by the officer's return, that he has caused such recording. The reasoning urged is. that it is a part of his duty as now decided in this action, and his return must show that he has done all parts of his duty. This reasoning confounds the distinction which ought to be observed, between those acts of his duty which rest *in pais*, and cannot be recorded until he incorporates them into his return, and those which immediately terminate in record evidence of a higher nature than his return of those facts could be. It is the duty of an officer serving a summons, to deliver a copy to the defendant. So of an attachment, if he attaches personal property. If he attaches real estate, he must also leave a copy at the town clerk's office. These, and all acts of a similar nature, should be incorporated into his return upon his precept, so that when the precept becomes a matter of record, these doings may become so likewise. It is equally the duty of the officer, after he has made his service, and endorsed the same upon his precept, to return the precept to the clerk or magistrate to whom the same is made returnable. But it never was supposed that he must write upon his precept, that he had so returned it: and this for the sound reason, that the higher evidence of the return is furnished at the office where the return is made.

Should the officer incorporate into his return of his levy, (that return, I mean, which is to be recorded,) the fact that he had caused the same execution and return to be recorded in the two offices, this could be no evidence whatever of the fact.

Washington,
February,
1827.

Hubbard
vs.
Dewey.

It could not possibly be true when written, for it must be written and signed before it could be recorded. It could, therefore, amount to nothing more than his intention to procure such recording. If such intention is carried into effect, it must be shown by something of a later date than the writing of his return of the levy. This was decided at St. Albans, two or three years since, by the Supreme Court, on the jury trial of the cause of *Elijah Paine* vs. *Shadrach Hathaway et. al.* The plaintiff claimed title under a levy, and produced from the county clerk a regularly attested copy of the execution, and the officer's return of his levy, and of the town clerk's certificate of his having recorded the same. On objection to this testimony, the Court first decided, that this copy of the town clerk's certificate of his recording was not legal evidence of that fact. But it was recited in the officer's return, that he had caused the execution and levy to be recorded in the town clerk's office. This was urged as sufficient to prove that fact. But the Court decided otherwise, and the plaintiff was obliged to produce a certified copy of the town clerk's records of the execution and levy ; and that was admitted.

If the officer *can* make any certificate or return that would be legal evidence of such recording, it must be a separate certificate, after all the recording is done. He might then certify upon the execution that he had caused the recording in both offices. This would probably be the first certificate of the kind ever heard of, and if this were treated as evidence at all, it would only be *prima facie ;* for a copy from the records would be higher evidence, and this, showing a defective record, would defeat the levy.----Just so of the town clerk's certificate upon an execution or a deed, that he has recorded the same ; it is treated as *prima facie* evidence of the fact. It is very convenient and proper that it should be so treated. But a fatal mistake may intervene in such recording. Such a portion of the boundaries may be omitted as to leave no land at all ; and an after purchaser may show this by a copy of the record, and the certificate of the recording becomes of no avail. This testimony from the records must be taken for the truth.

But it is urged, that it should appear in the county clerk's office, that the recording is regular in both offices. This, as before observed, would be convenient and proper ; but, as any evidence that could be furnished there, would be at most but *prima facie,* and would be superceded by the better evidence from the records, it would seem wrong to decide the levy void for want of some such *prima facie* evidence, which is no where expressly required by the statute. If a deed were regularly recorded, but, through some neglect, there is no certificate placed upon it of its being so recorded, and the clerk who made the record has deceased, I can entertain no doubt but that a certified copy of the record of such deed, produced with the deed, would amply and legally show it recorded. And there can be no difference in this respect between a deed and execution.

Washington,
February,
1827.

Hubbard
vs.
Dewey.
There is no statute that expressly requires the town clerk to certify upon a deed or execution, that they have recorded the same, nor that makes any such certificate evidence of the fact; but the practice has always been for them to make such certificates, and the same have been received as *prima facie* evidence of the fact. But they must not be treated as conclusive, for the reasons before given.

But it is further urged, in this case, that it appears from the officer's return itself, that he had left a true and attested copy with the town clerk; hence it must be inferred that the recording was from that copy. This reasoning is not conclusive. It appears, equally, from the same return, that he left a true and attested copy with the county clerk, to whom he returned the execution; and yet the county clerk has certified regularly that he recorded the execution and levy, and has furnished a copy of that record. Besides, this part of the officer's return, like any other fact then future, could not have been true when he signed his return. It could only have become literally true after he had left both copies. It is probable this part of the officer's return crept in by his using a form that contained such expressions; and, if he thought much about the meaning, he might have supposed those records, made from the original, might be called copies. This is rendered the more probable, from the circumstance, that, in his return, instead of charging the fees he must have paid the clerks, as fees paid to them, he has charged the same as fees for two copies. By this it would seem, that he called copies that writing done by the clerks in recording, for which he paid the fees charged at the foot of his return.

That part of the return about his leaving copies with the clerks, in whatever manner he was induced to insert it, may well be considered a mere surplusage. It could not be true when written, and could be no legal evidence that the fact afterwards existed. It describes an act not necessary for him to perform, and it does not tend to disprove such acts as he ought to have performed, if they are shown by proper testimony. If the recording had been from a copy attested by the constable, that attestation would naturally have been recorded before the clerk added his own attestation of its being a true record. That which he has attested as a true record, contains the execution and return of the levy at full length, and nothing more; and when he writes that the foregoing is a true record, the legal presumption is, that it is a record of that of which it purports to be a record----that is, of the execution and levy; just as the clerk's saying a true record, at the foot of his record of a deed, is taken to mean, a true record of such a deed as is there copied into the record. This copy, then, of that record which is attested as a true record, and is in fact a true transcript of the original execution and the officer's return of his levy, and of nothing more, must be taken to be the best evidence that the execution and levy were recorded in the town

clerk's office, and sufficient evidence of that fact, according to the charge given to the jury by the county court.

Thus the case would appear were it a new case.

But it is urged in argument, that various decisions of this Court in times past, and even two decisions against this very levy, stand as authorities by which we should now feel bound, and, in consequence, grant a new trial. No decision is read to us, and none has ever been reported upon the subject. The subject of recording from the copy of execution and levy, instead of the original, has been frequently spoken of as a subject of litigation, for many years past, and the understanding has been, that, upon that point, the decisions have been different ways, at different periods; and it has been fully understood that the latest decisions have been, that such recording from the copy, was not good to avail the creditor. We have always supposed, as might well be supposed, that the question was raised when the records, or copies produced, carried their own evidence that the record was made from a copy merely : and we are not informed of any case where the question agitated was, whether the evidence showed a recording from the copy or not, till the questions raised upon the levy now under consideration. From what we now learn about the decisions made upon this levy, it may well be inferred, that the court, in the first instance, heard the objection raised upon a jury trial, and considered it settled by former decisions, and decided more hastily than would have been done, had it been viewed as a new question. Indeed, we should suppose by what is told us, that the suggestion, that the evidence of the records being made from the original, must appear in the county clerk's office, was made without a moment's consideration, and might probably have resulted from a supposed counter evidence in the return itself, which has been already sufficiently noticed. It also seems very probable, that the last decision made upon this levy, was made chiefly upon the credit of the first. It seems, also, that the court at last did not feel so sure of the correctness of their decision but that they suffered a non-suit in the action. As to the rights of these parties, therefore, the question is still open for adjudication as justice shall require, excepting as to the costs of this suit. If the levy is established, the plaintiff will still be entitled to the land covered by the levy.

On the whole view of these decisions, which rest in recollection only, and the grounds perhaps not fully known at this day, the decisions themselves not on cases reserved for full investigation, we consider them not of sufficient weight to induce us to decide against the levy, which we think supported upon grounds so reasonable as those now mentioned.

Another objection is raised, which was not mentioned on the trial, but which fairly comes up before us.

It is objected, that the return states the appraisers to be good and lawful free-holders, and does not state that they were judicious and disinterested free-holders. The case shows that the

*Washington,* record of the levy was objected to, but admitted.——If this ob-
February, jection vitiates the levy, it ought not to have been admitted.
1827. The Court, however, consider this objection not available. In
Hubbard the first place, the levy in this respect exactly conforms to the
*vs.* form given by Judge *Chipman,* which has often been decided
Dewey. as established by settled practice under it.

The plaintiff has cited the 14th of *Mass. Rep. p.* 20, as in
point. It appears, the court there decided that the officer's re-
turn was defective, by reason of its not stating in the words
or meaning of the statute, that the appraisers were judicious
and disinterested free-holders. But the same case furnishes a
reason for that decision. It shows that the officer himself, in
pursuance of their statute, appointed one of the appraisers; he
should therefore aver that he, at least, was such an one as the
statute required. By our statute, the appraisers are to be ap-
pointed by one or both of the parties, or by one or both and
some justice of the peace, who, by law, may judge between the
parties. There is no case in which the officer can appoint ei-
ther of the appraisers. Should, therefore, the appraisers be all
such men as the officer could not conscientiously certify that
they were judicious and disinterested free-holders, as he has
nothing to do with their appointment, he must not be charged
with neglect for his omitting to state such fact.

On the whole, the Court consider the levy good in itself, and
that it was proved by proper testimony on the trial, to have
been properly recorded in the town and county clerks' offices;
and that the judgment of the county court be affirmed.