*Sawyer & Fletcher*, for reviewee.
*Paddock & Young*, for reviewers.

———————

## JOHN SKINNER, JOHN HURD and WM. HURD *vs.* JEFFRY WATSON and JOHN McDANIEL.

When an execution is levied on land the record in the town clerk's office may be made from a copy of such execution, and officer's return thereon ; and such record will be sufficient, if it substantially agree with the original.

If there be an error or mistake in recording the levy of an execution, which does not tend to the injury of any person, and the record is sufficient to answer all the purposes for which it was made, the levy is not thereby void.

This was an action of *ejectment* for one fourth of an acre of land being a part of lot no. 13 in the town of Hydepark, and drawn to the original right of Roger Enos jr. being the first division of lots in said town. Plea *not guilty*. In addition to the evidence, which the plaintiffs had given to the jury on the trial, they offered a copy of a judgement of the county court for the county of Orleans, in June term, 1820, in favor of the plaintiffs against Jacob P. Hadley for damages and costs, and an execution upon said judgement, and levy upon the land in question on the 2d day of August, 1820. And of this execution and levy the plaintiffs produced two sets of copies ; one set showed the execution and officer's return thereon to be duly recorded in the records of said county court by their clerk, on the 3d of August, 1820 ; and also showed that on the same day a *copy* of the execution, and officer's return thereon, was recorded by the town clerk in the town records of Hydepark, where the lands lie. In this last record

ORLEANS,
March,
1832.

Skinner et al.
vs.
Watson et al.
there was a *mistake* : the appraisers, as it appears in the officer's
return, appraised land to the amount of $1044,34 in satisfaction
of the execution, and legal costs thereon, as stated in the bill an-
nexed. This was correct. But in the record from the town
clerk's office it was stated, that the appraisers apraised land to the
amount of $1275,52 in full satisfaction of the same execution, and
bill annexed. The amount of the execution and bill annexed
were alike in both records, and the insertion of the $1275,52
was evidently a *mistake*. The defendants objected to this re-
cord going to the jury ; because it purported to be a record of a
*copy* of the execution, and officer's return, and not a record of
the execution itself and officer's return, and because of the above
*mistake* ; and the court excluded the evidence ; to which decision
the plaintiff excepted.

The second set of copies showed a recording of the execution
and officer's return in both said offices in September and Decem-
ber, 1822 : but this was not relied on.

The defendants then offered in evidence to the jury, a mort-
gage deed of the land in question from said Hadley to *McDaniel*,
dated January 10, 1821, and evidence to show, that the equity
of redemption on said mortgage was foreclosed in 1827. The
defendants also offered in evidence the records of a vendue title
of said land obtained by *McDaniel* on a road tax, granted by the
legislature in 1822. They also offered in evidence a record of a
judgement obtained by default in an action of ejectment in favor
of *McDaniel* against the plaintiffs and others, for the land in ques-
tion, before the county court in Orleans county, February term
1825.

The plaintiffs objected to the admission of all the above evi-
dence so offered by the defendants ; but the court admitted it ;
to which the plaintiffs excepted. The case now came before
this Court on the above exceptions.

The plaintiffs contended, by their attornies, *Paddock* and
*Young*, that they claimed the land by levy of execution on the
2d of August, 1820, recorded in the town and county clerk's of-
fice, on the day following ; but the record in the town-clerk's of-
fice was made from an attested copy of the execution and return
thereon, certified by the officer. The copies from this record
were objected to in the court below, for the reason, that a legal
record could not be made from the officer's certified copy. Up-
on turning to the statute we find the provisions upon the subject

ORLEANS,
*March,*
1832.

Skinner et al.
*vs.*
Watson et al.

of recording are, " that all executions extended and levied upon
" any lands, tenements or houses as aforesaid, together with the
" officer's return thereon, being recorded in the records of the
" town in which such houses, &c. are situate, and also returned in-
" to the office of the clerk of the court, or justice of the peace,
" from which such execution issued, and there recorded, shall as,
" against such debtor, his heirs and assigns, make a good title to
" the party for whom such estate was taken, &c." The simple
plain construction of which is, that whenever a creditor shall ex-
tend and levy his execution upon the real estate of his debtor, he
shall cause the execution and officer's return to be transcribed
upon the records of the town where such estate lies, and also upon
the records of the court from whence the execution issued. If
this be the most correct and rational construction, which can be
given to the statute, the plaintiffs (saying nothing at present of the
mistake) have complied with both the letter and spirit of the law.
The respective clerks are to make the records, and the law will
be equally satisfied, be it made with red ink, or black; neither
does it point out the manner the clerks shall make it, whether it
shall be put in scrip, or Roman characters, or in both, having it a
*fac-simile* of the execution—whether they shall first read and then
write from recollection—whether the officer shall read and the
clerk write, or the clerk read, and the officer write, or the
officer do both. Would not the letter and spirit of the law be
complied with in the one case, or the other, provided the exe-
cution and return were fairly transcribed upon the record? 
Again, when this record was made there was no statute provision
authorizing a select man to perform the duties of a town clerk in
any case ; and supposing an officer on arriving at the office
should find the clerk to be absent, and would not return for
weeks, and, being under the necessity of returning the execution
for an *alias* to extend and levy on other lands, should make out
and certify a true copy of his execution and return, and the clerk
had copied the same upon the records, which proved to be an ex-
act transcript of the original : we ask the court, whether they could
reject the copies of such a record, for the reason that the record
itself was made from the officer's copy ? If there ever was a peri-
ed, when a doubt could reasonably be entertained upon the sub-
ject, that doubt was removed by the act of 1798, called the gener-
al fee bill, which gave to an officer fifty cents, *for a copy of an
execution extended on lands, and the return thereof to the officer
for record.* If this copy is to be recorded, then the execution

ORLEANS,
*March,*
1832.

Skinner et al.
*vs.*
Watson et al.

need not be, in the town clerk's office. We are then met with the objection that there is a variance between the execution and return, and the record in the town clerk's office. It is contended by the defendants, that as the record is an exact transcript of the return, that, therefore, the execution and return had not been recorded in the town clerk's office as the law directs : but we answer, the execution was recorded within the intent of the law ; for it gave sufficient notice to the public, that the land had an execution levied upon it, and it gave notice to the full amount of the incumbrance, and even $232,18 more.

*Sawyer and Fletcher, for defendants.*

The opinion of the Court was delivered by

BAYLIES, J.—We are called upon to decide whether this record of the *copy* of the execution extended on lands, and officer's return thereon, made in the records of the town where the lands lie, on the 3d of August, 1820, is sufficient in law. In deciding this point I shall take a concise view of our registry acts, and see whether they have ever permitted a *copy* of a deed, or a *copy* of an execution, extended on lands, to be recorded in the town records, instead of recording the deed, or execution itself.

The act of February, 1779, says, " that henceforth, all deeds or conveyances of any houses or lands, within this state, signed and sealed by the parties granting the same, having good and lawful right or authority thereto, and attested by two or more witnesses, and acknowledged by such grantor or grantors, before an assistant or justice of the peace, and recorded at *length* in the town records where such houses and lands do lie, shall be valid to pass without any other act or ceremony in law whatsoever."

" That the town clerks in the several towns in this state, shall fairly enter, and record at length in their records, all deeds, conveyances, and mortgages of lands, tenements, rents or other hereditaments, lying and being within the town where such clerk's records are kept, within this state—made, executed, and acknowledged, or received in manner aforesaid, which shall be brought to him to record ; and shall on receipt thereof in his office, note thereon the day, month and year when he received the same, and the record shall bear date accordingly."—*(State papers,* 336–7. The act of March 8, 1787, says, " that all deeds or conveyances of any houses or lands, within this state, signed, sealed, and delivered, by the parties granting the same, having good and lawful

authority, attested by two or more witnesses, and acknowledged by such grantor or grantors before a justice of the peace, and recorded at length in the town clerk's records, where such houses or lands do lie, shall be valid to pass the same without any other act or ceremony in the law whatsoever."

*Orleans, March, 1832.*

Skinner et al. *vs.* Watson et al.

" That the town clerks, in the several towns in this state, shall fairly enter and record at large in their records, all deeds and conveyances of lands, tenements and hereditaments—and shall, on receipt thereof in their offices, note thereon the time when they received the same, and shall date the record and filing thereof accordingly."—(*Haswell's ed. Stat. p. 32.*)

The Act of March 6, 1797, says, " that all deeds and other conveyances of any lands, tenements or hereditaments, lying in this state, signed and sealed by the party granting the same, having good and lawful authority thereunto, and signed by two or more witnesses, and acknowledged, by such grantor or grantors, before a justice of the peace, and recorded, at length, in the clerk's office of the town in which such lands tenements and hereditaments lie, shall be valid to pass the same, without any other act or ceremony in law whatever."—(*Slade's ed. 167.*)

*Act of 28th February,* 1797 :—" And it is hereby made the duty of the town clerk or register, truly to record all deeds and conveyances of any houses, lands or tenements, and all writs and executions, when by law it becomes necessary.—(*Slade's ed. 415.*)

The above statutes relate to deeds, and the following to executions. The act of 1779, says, " All executions duly served upon any houses and lands, being returned into the clerk's office of the court out of which the same issued, and there recorded ; as also a copy thereof lodged in the town clerk's office in the town, where such houses or lands lie, (which said clerk shall enter in the town book of records, taking the same fee as allowed for recording deeds,) shall make a good title for the party for whom they shall be taken, his heirs and assigns forever."--(*Vt. state papers,* 363.)

The act of 1787, says, " And all executions duly served upon any such houses and lands, with the return of the officer thereon, being recorded in the records in the town wherein such houses and lands are situate, or in the office where deeds respecting such lands ought by law to be recorded, and also returned into the office of the clerk of the court or justice, whence the same issued, and there recorded, shall, as against the debtor, his heirs and assigns, make a good title to the party for whom they shall be taken, his heirs and assigns forever."

54

ORLEANS,
*March*,
1832.

Skinner et al.
*vs.*
Watson et al.

"And it shall be the duty of the officer to cause the execution with his endorsement thereon to be entered on the town records, or in the proper office, as aforesaid, before he return the same ; and the officer shall have two shillings for causing the same to be recorded, with additional fees for his travel.—*(Haswell's ed.* 65.)

The act of 1797, says, " And all executions extended and levied upon any houses, lands, or tenements, as aforesaid, with the return of the officer thereon, *being recorded* in the records of lands of the town in which such houses, lands or tenements are situate, or in the office wherein deeds respecting the same are required by law to be recorded, and also returned into the office of the clerk of the court, or justice of the peace, from which such execution issued, and there recorded, shall, as against such debtor, his heirs and assigns, make a good title to the party for whom such estate was taken, his heirs and assigns for ever."—*( Ch.* 28, *s.* 3, *Slade's ed.* 210.)

The general fee bill of 1798, under the head of sheriff's fees, has this item : " Copy of an execution extended on lands, and the return thereof to the office for record, 0,50."

The statutes before 1797 are repealed, and are referred to for the better ascertaining the meaning of the legislature in passing the acts of 1797 and 1798. It is a rule that every statute should be construed according to the intention of the legislature, and where there is doubt, all other statutes made in *pari materia*, whether repealed or not, should be considered. In taking this view, I am satisfied, that the intention of the legislature, in their acts directing the recording of deeds, was, to have the town-clerk make the record from the deed itself, and not from a copy. But in considering the acts, which direct the recording of executions extended on lands, I am inclined to believe that the record in the town clerk's office may be made from a copy of such execution and officer's return thereon. The act of 1779, says, " A copy of the execution shall be left in the town clerk's office, which copy said clerk shall enter in the town book of records." Here the practice of recording a *copy* of the execution, and officer's return thereon commenced, and continued, in all probability, so long as that act was in force. Under the act of 1787, it was the duty of the officer " to cause execution, with his, endoresment thereon, to be entered on the town records." Most likely the practice of recording from a *copy* of the execution and officer's return was not so uniform under this act as it was under the act of 1779. I however presume that no small share of the records were made.

ORLEANS,
March,
1832.

Skinner et al.
vs.
Watson et al.

from copies. While the act of 1787 was in force, there was no fee bill giving the officer any thing for making a copy for record —all he got was the two shillings and additional fees for travel, mentioned in the act. And when I consider the acts of 1797 and 1798, in connexion with the former acts, I think that the practice of leaving a copy of execution and return thereon for record in the town clerk's office (which practice had existed for about eighteen years in this state) was recognized and sanctioned by the legislature, in and by their act of 1798, wherein they say, " copy of an execution extended on lands, and the return thereof to the officer for record, 0,50." The legislature did not intend this fee to pay an officer for doing an illegal act, but to reward him for doing what they considered a lawful and necessary act. If the officer did his duty in leaving such copy to be recorded, then the town clerk had at least an implied authority to record it, and when recorded, it satisfied the words, " being recorded in the records of lands," &c., used in the act of 1797. But it is contended that there was no more propriety in recording a copy of an execution and officer's return thereon, than there was in recording a copy of a deed. The two cases are not alike : there was a long uninterrupted practice from 1779 to 1821, of recording copies of executions extended on lands in the town clerk's office, where the lands lie ; and this practice was sanctioned by statutes either expressly or impliedly. But there has been no practice nor statute to sanction the recording of copies of deeds in the town clerk's office. A deed is not lodged in any public office for inspection ; therefore, it is often the case, that the only and best evidence of its existence to a purchaser, is its record in the town clerk's office, where the lands lie. This record should be of the deed itself, and not of a copy of the deed. But an execution extended on lands is not carried about in the pocket of the creditor, but is returned into the office from which it issued, and is there recorded. Here every purchaser of the land may see the execution itself, and the officer's return thereon, and a full record of them. Having this source of information, it *seems* that a true copy of the execution and officer's return put upon the records of the town, where the lands lie, would be sufficient notice to purchasers. Nor am I inclined to censure the practice of recording copies of executions extended on lands under the aforesaid statutes relating to the subject. It was certainly a convenient practice for officers to leave copies in the town clerk's office for record, instead of waiting to have the execution and return recorded. And many cases

ORANGE,
March,
1832.

Skinner et al.
vs.
Watson et al.

may be supposed, where no other course could be taken, and have the business completed in season for the safety of the officer, and creditor. I do not think it would be just to disturb the landed titles of the citizens of this state by deciding that the *recording of a copy* of an execution extended on lands, and the officer's return thereon, in the town clerk's office, where the lands lie, is *insufficient* in law. It *seems* to me, that taking a full view of the statutes, and the practice under them, *it is sufficient* to record such copy. I say "the practice under them," because it is a rule, that a long uninterrupted practice under a statute is evidence of its construction.—(2 *Dall.* 124.)

The execution in question was levied on land on the 2nd of August, 1820. On the 3d of August the officer left a copy of the execution and his return thereon in the town clerk's office in Hydepark, for record. And the town clerk certifies as follows: "The above is a true record of the officer's copy, received August 3, 1820."

"Attest,        *Abner Flanders, Town-Clerk.*"

As the levy of the execution and record of the copy were made while the aforesaid acts of 1797 and 1798 were in force, the Court decide, that the record of the copy is sufficient, if it substantially agrees with the execution and officer's return thereon. If the record does not agree with the execution and return, it is erroneous, and whether the record be void or not, will depend on the error it contains. If the error tends not to the injury of any person, and the record is sufficient to answer all the purposes for which it was made, then it is not void.

But suppose there is no fatal error in this record, (which we do not now decide,) then the question is, who has the better title to the land in question, the plaintiffs or the defendants? The plaintiffs' title was complete on the 3d of August, 1820, and the mortgage deed from Hadly to *McDaniel* was executed, January 10, 1821 : so the decree of foreclosure on this mortgage could not affect the plaintiff's prior title. The vendue title of *McDaniel* is defective : the record of the committee's advertisement does not show the year in which it was printed in the Rutland Herald ; and no list of lands on which the taxes had been paid was furnished the collector by the committee, so as to enable him to sell or deed for the non-payment of taxes. We have already decided in the writ of review, *John Skinner et al.* vs. *John McDaniel*, at this term, that the judgement in the action of ejectment in favor of said *McDaniel* vs. *plaintiffs et al.* was, as it respected the plaintiffs,

utterly void ; because the writ in that action was never served on <span>ORLEANS, March, 1832.</span> the plaintiffs, and they had no day in court. There is then nothing in the way of the plaintiffs' recovering in this action, if the <span>Skinner et al. vs. Watson et al.</span> variance between the record of the *copy* in the town records of Hydepark, and officer's return on the execution, be not fatal to the plaintiffs' title. Whether this variance be fatal or not the Court take time to consider, and the case is continued till the next term of this Court.

After the forgoing opinion was pronounced by Mr. Justice BAY-LIES, Mr. Justice ROYCE pronounced the opinion of the Court in the action in favor of *Aaron P. Cleaveland* vs. *Ephraim Garvin* and *John McDaniels*, in which was litigated the same question as in the action of *Skinner* and *Hurds* vs. *Watson* and *McDaniels*, with regard to the validity of the levy of an execution upon the lands of the debtor, where the recording of the execution and levy was made, in the town clerk's office, from a copy left by the officer ; there being no dispute, but that the recording contained the true and correct matter, as if it were recorded from the original ; yet it appeared at the close of the record, that it was recorded from a copy. This opinion supported the levy, affirming the opinion in the other cause upon this point : in which opinion considerable stress was laid upon the circumstance that the officers may probably have been led to leave a copy for record with the town clerk, by reason of the statutes allowing a fee to the officer for leaving such copy, and the amount of property, which has been set off in satisfaction of executions, and where the record was thus made from the copy, is very considerable.

After which, Mr. Justice WILLIAMS delivered the following dissenting opinion upon the same point.

WILLIAMS, J.—I do not view this subject in the same manner as it is viewed by my brethren, and feel compelled to dissent from the decision which has just been made.

In passing a title by the levy of an execution, a strict compliance with the statute in every particular is required. The returns of officers setting off real estate on execution have been severely criticised, both in this, and other states, where property is transferred in this way, much beyond what I have thought a just regard to the rights of creditors and debtors required. It has nevertheless always been considered, that the statute must be complied with, and the doubts which have been entertained, have been rather as

ORLEANS,
March,
1832.

Skinner et al.
vs.
Watson et al.

to what shall be evidence of a compliance with the statute, than whether an omission to do what was necessary to pass the title could in any case be supplied by doing something not required.

It appears to me that the statute has made it essential to pass the title, that the execution shall be recorded in the office wherein deeds respecting the same lands are required by law to be recorded, and also that it shall be returned into the office of the clerk of the court, or justice of the peace, from which the same issued, and there recorded. This being done, the statute says, "shall make a good title to the party for whom such estate was taken, his heirs," &c. The statute requires the *execution* to be recorded, and, in my opinion, nothing passes until this is done, and until the *original execution* itself is recorded : recording a copy is neither a compliance with the statute, nor is it of any avail for the purpose of notice, or any other purpose whatever.

Recording is enrolling a paper on the public records, whether of the town or county, by, or under, the superintendance and direction of the officer who is appointed to make the records, and who must not suffer any paper to be enrolled or copied into the records, but such as he knows, or is proved to him, to be the paper intended to be recorded. A departure from this in any instance is to make the evidence of title derived from the record uncertain, precarious, and liable to great fraud and imposition.

One of my brethren has urged, that nothing more is intended by the record than notice of the execution. If this was all the object intended by the recording, still it would be essential that the notice should be such as the statute requires, or it would be no notice at all. I cannot accord with the view which has been taken of this notice, which, indeed, renders it immaterial, whether the record was made from the original, from memory, from a copy, or from a copy of a copy, or from something even still more remote, and which also renders it immaterial, who furnishes the copy for the recording officer, whether the officer levying the execution, the creditor, or even a bye-stander. If all that is required is, that a correct copy of the execution shall be found on the records, it would be as immaterial how it came there, as was said in the argument, as it would be whether the record was made with black ink or red ink.

But such a record of a copy of a deed has been decided by this court to be of no avail. In the case of *Stevens* vs. *Brown*, in Grand-Isle county, 1830, *(3 Vt. Rep. 420,)* it was expressly laid down and adjudged by this Court, that "the record of a copy

is not in law a record of the original deed, and is no evidence of ti- ORLEANS, March, 1832.
tle ;" that "it is a nullity, and cannot be good for the purpose of no-
tice, or avail to any effect in law." The emphatic language of Skinner et al.
the Court in that case well applies to the recording of the copy of vs. Watson et al.
an execution.

I apprehend however that something more than notice, merely,
was intended by this requisition, as to recording the execution.
It is made essential to pass the title.

When deeds are recorded, the record becomes evidence of title.
The record, or copies from the record, have been decided to be
such evidence, and why, I ask, does it not as well comport with the
statute for a town clerk to record the copy of a deed, as the copy of
an execution, without having any legal evidence of the existence
of the deed, or of the execution, and without knowing that they
compare with the original ? I can see no difference : yet we see
that this Court have considered such a record, as to a deed, of no
avail, and not authorized. It has been deemed necessary, inas-
much as these records of deeds, executions, &c., are evidence of
title, and copies from the record may be read in court without
producing the original, except when the original is in the custody
of the party making the title, to make legislative provision on the
subject of recording. A recording officer is to be appointed : he
must be sworn, and in some cases give bonds. He must *know*
that the paper recorded is carefully copied on to the records. If
it is not done by himself, it must be under his inspection and con-
trol, so that in either case, he can certify that it is duly recorded ;
and he should not suffer nor permit any paper to be copied there,
but what he knows to be the paper intended to be recorded.
Indeed, the security of our titles depends upon this.

But can the recording officer know that the copy of a deed, or
of an execution, given to him, compares with the original, or that
there is any deed or execution to be recorded ?

The sheriff or officer levying an execution is not made a certi-
fying officer, and copies attested by him are no better authentica-
ted than if attested by any other individual.

If a deed may not be recorded unless there is a certificate un-
der the hand of a magistrate endorsed thereon, that the same has
been acknowledged by the grantor, or proved by witnesses, by what
process of reasoning can we come to the conclusion, that a copy
of another instrument transfering the property of an individual
against his consent, not authenticated by the certificate of any offi-

ORLEANS,
*March*,
1832.

Skinner et al.
*vs.*
Watson et al.

cer duly authorized, may be placed on the record and considered as a record of the original ?

Again, I cannot assent to the proposition, that all that is required is, for the court to be satisfied, that what appears on record compares with the original, without any reference to the inquiry by whom it was placed there, or from what it was copied. If this was the case, we ought always to compare the record with the original, and the certificate of the recording officer ought not and would not be received, as the slightest evidence that any original ever existed. I admit that the record ought to be a true copy of the original ; but the evidence, and the only evidence, of this fact, is the certificate of him whose duty it was to see that the original was truly copied, and enrolled on the record.

Nor do I see that any argument can be drawn, in favor of thus recording a copy, either from the old statute which was passed in 1779, or in the fee bill in the statute passed in 1797. The statute of 1779 did not make it necessary that the execution should be recorded, in the town clerk's office, to pass the title ; but only required that a copy should be lodged in his office, which he was directed to enter on the town book of records. While this statute was in existence, such a record, as the plaintiff claims in this case, would have been good. Probably from the inconveniences which were experienced under this statute, it was repealed after a few years ; and since the year 1787, the law has always required the execution itself to be recorded.—*Old Stat. Has. ed. p.* 67.

The fee bill of 1797 was also repealed after a few years. There was in that fee bill among the fees allowed to sheriffs, &c., an item of fifty cents, for a " copy of an execution extended on lands, and the return thereof to the office for record." If this would authorize recording from a copy, it would as well apply to the record in the office of the clerk of the court, or justice of the peace, from whence the execution issued, as to the record in the town clerk's office. In the same fee bill, it may be noticed, the fees, which are given to the town clerk, and the clerk of the court, as magistrates, are for *recording the execution*.

There is nothing in this fee bill which repeals the positive directions of the statute, in relation to recording the execution ; and it cannot be repealed by so remote and distant an inference as would be drawn from the expression made use of in the fee bill. This item was probably inserted by mistake, from the practice which has obtained while the statute of 1779 was in force.

It appears to me that the inference to be drawn from the exist-

ance and repeal of the statute of 1779, is not in favor of the position claimed by the plaintiffs, but directly against it ; and that the repeal of the clause in the fee-bill is an argument that the legislature considered, that there was no service to be performed by the officer which entitled him to that fee. I am aware there was a book of forms published some time since, in which the officer is made to state in his return, on an execution levied on land, that he has left a copy with the town clerk for record. I cannot admit however, that a *book of forms*, published by an individual, should repeal a statute.

Skinner et al.
*vs.*
Watson et al.

I do not know that this form, or a practice under it, was generally adopted or prevailed in this state ; though I am sensible it was so in some counties. Nor do I know that it was ever established by any judicial decision. On the contrary all the decisions, which have come to my knowledge, have been, that a record from a copy of an execution was not good, and passed no title.

It has been urged, however, that these decisions are not reported. I consider them, nevertheless, as authorities which ought to govern our decision in this case. The decisions of this Court do not derive any additional efficacy as authorities, from being reported. A hasty decision, whether reported or not, if it will not bear examination, and leads to great and manifest inconveniences, may be overruled. A course of decisions, whether reported or not, which have been considered as establishing the law, and which affect property to any great extent, ought not to be overruled without weighty and good reasons therefor. Surely, they ought not to be, merely because we think that they might have been otherwise at first.

I think, however, it will be found that the decisions upon this subject in this Court have been uniform, as much so, as upon any subject whatever. I have been informed, that it was so decided prior to the year 1821, and by more than one court : I do not know in what case, or at what time. But when I first came on to the bench in 1822, I found that this question had been decided the year before, while C. J. VAN NESS presided in this Court, and the decision was not questioned in several cases where a title was set up under an execution no otherwise recorded in the town clerk's office than by a copy. In 1823 there were further changes in the members of the Court, so that there was an entire change of the members since the year 1821. During that year this question was considered as settled ; and if I mistake not, this very levy was decided to be bad on that account, during that

ORLEANS,
March,
1832.

Skinner et al.
vs.
Watson et al.

time.  This embraces a period of four years, when no doubt was entertained by the bench, that a levy of an execution upon lands when the execution was not recorded, or when only a copy was recorded, was considered as bad, and conveying no title.   I am not sensible of a  decision to the contrary, eithei before or since. The language of the present Chief Justice in the case of *Hubbard* vs. *Dewey*, 2 *Aik.* 312, has been supposed to countenance these decisions, and was read in this case as an authority against these levies.   We learn,  however,  from him, that this supposition is erroneous ; that the case was decided upon this  ground, that from the evidence it  appeared the  execution was recorded from  the original,and not from a copy.  The fact had been overlooked by the Court, who had  made two  decisions against the validity of  that levy.

It has been said that many levies have been  made in this way, and there is danger in deciding against them.   The danger, if any exists, I apprehend will be in  overruling these  decisions at · this time.   Property may have been bought and sold upon the belief, that the law was settled agreeably to these determinations.   I feel very confident, few persons would have considered a levy,  when there was no other record, than from a copy as in this case,  as any embarrassment on the title of a debtor.   Creditors, who had thus levied their executions, may have obtained·a further satisfaction, considering their levy void.   This very defendant may have neglected to call on his grantor for any further security, fully relying,that by the decision of the Supreme Court, the law was settled, and his title perfect.   If any sheriffs, deputy sheriffs, or constables, have been exposed to hazard by the former decisions, as is said by one of my brethren, I presume no levy has been made in this way very recently ; and they are now protected by the statute of limitations.   If they are not, the decisions of this Court should not be changed for their benefit particularly.

HUTCHINSON, C. J., expressed his opinion as follows : this question, whether the levy of execution upon real estate, otherwise perfectly regular, yet recorded in the town clerk's office from a copy, lodged with him by the levying officer, has become very important, by reason of the extensive practice, for many years, to record in this way.   And it does appear to me, that strong reasons exist for supporting such levies, if it can be  done by any fair construction of the several statutes.  In the first place, the creditor never takes real estate for his debts because he  chooses it ;

ORLEANS,
March,
1832.

Skinner et al.
vs.
Watson et al.

nor because it will be as good for him as the money ; nor because he expects it will come to him at a low price ; but he takes it as the last, and only resort, to save his debt, and knowing that the money would be better for him, and knowing, that he must pay the full value of such real estate. Again, the statutes were calculated to lead to such a practice ; and it would be hard if officers, who are able, should be obliged to make the creditors good for such a defect. If they are not able, the creditor must lose his debt at all events, if such defects are adjudged fatal to the levy. It would not be at all strange, if a well informed officer, when making a levy of execution upon real estate, and knowing that a record must be made in the office whence the execution issued, and also in the town clerk's office ; and seeing the statute of 1798, which gives him a fee in these words, " Copy of an execution extended on lands, and the return thereof to the office for record, 50 cents ;" it would not be strange if such an officer should be led to suppose that a copy must be left, or no fee would be given ; and to enquire for the use of such copy, and be unable to discover any use, unless it were to make the record required by the statute of 1797, and hence conclude, that the leaving of this copy was all that was required of him to enable the town clerk to make the record, required by law. Many officers were thus led to do their business in this way, with no doubt of its correctness. These considerations are of such weight with me, I acknowledge, I have approached the subject with a strong desire to find some fair construction of the statutes that will support the levies which are thus recorded, and which are liable to no other objection.

The statute of 1797 requires, in nearly or quite the same words, the recording of the execution and levy in both offices. There was, undoubtedly, some beneficial object in this requisition. There is no better rule in construing statutes, than so to construe as to give effect to the object intended. It is easy to see, that the recording in the office from which the execution issued, was proper and, perhaps, necessary, to let the debtor see that the judgement and execution were satisfied, and the exact property with which it was satisfied, its description, appraisal, &c ;—to let him see the costs of the levy, and the exact date of the levy and return, whence to calculate when to redeem, if he would redeem at all. There, also, is the place of payment, if he would redeem the premises at all. And there could be no possible use for the statute to require any other record for the debtor himself. He knows before what court he is sued to appear ; and where to go

ORANGE,
*March,*
1832.

Skinner et al.
*vs.*
Watson et al.

to learn every thing connected with the suit. Creditors and pur-chasers may get information in the same way, at the same office; but they are not supposed to know where to find that office. They have had no official notice, before what court the suit was brought, or whether there was any suit, that could affect the title of the land. They should be able to obtain such notices as may affect the title of lands, by applying at the office where such titles are usually recorded. Hence the statute provides for the record-ing of executions and levies in the office of the town clerk of the town where the land lies. The sole object of this must be notice to creditors and purchasers. It is of no use to the debtor, as al-ready observed. He has no right to redeem by payment to the town clerk; he must pay at the office where the judgement was rendered. If I am correct in this, that the object of recording in the town clerk's office, is notice to creditors and purchasers, what sort of recording will effect this object? Surely, nothing short of recording the correct matter, which operates as notice. There must be the recording of that, which, if read, gives the same in-formation, as the reading of the original execution and levy. I am not fully satisfied with any reason that can be given for requi-ring more. Whether the town clerk had the execution and levy before him, and looked alternately upon it and his record book, taking sentence after sentence, or thus looked at a correct copy, or had seen the original a mile off, and so recollected its contents, as to write them verbatim in his record book, seems to me of no con-sequence to the creditors or purchasers. If the correct matter is written, it gives the correct notice; and with this they may well be satisfied.

Wherever the law requires originals rather than copies, and ex-cludes copies of copies, the reason of that law is, that, otherwise, mistakes may intervene to the injury of those who might be affec-ted by such evidence, if admitted. In the position I would now maintain, I exclude the possibility of these mistakes, by requiring the right matter to be recorded. This is always capable of proof, or detection, as either party may wish, by comparison with the original, or with a copy of the record in the office, where the judgement was rendered and recorded.

I know there have been some decisions to the contrary of this, as mentioned by Mr. Justice WILLIAMS. These are not report-ed, so that we might see the exact grounds of such decisions. But I have no doubt of the fact, that, at a time, this court consid-ered the law so settled as to exclude further investigation, than

.to learn that the recording was by copy. The decisions in the circuit court of the United States, I believe, have been both ways. The last decision there made, Justice THOMPSON presiding, was as we now decide.