## G. W. BENEDICT v. B. J. HEINEBERG.

*Execution. Levy. Record. Certificate. Evidence. Railroad.*

Where the record of the levy of execution embraces the officer's return stating that the execution with the officer's return was duly recorded in the town clerk's office, and a certificate of the town clerk of the same fact, and a certificate of the county clerk that the same was duly returned to the county clerk's office and there recorded, an authenticated copy of such record is *prima facie* evidence of the fact that the same was duly recorded in both offices.

A railroad company having abandoned the use of a portion of their road for any purpose of public service and for use as a road-bed, and using it only in the exercise of means and measures to get rid of its character as a railroad, viz.: to take up and carry away the rails and to get terms with the town as to obligations touching street bridges, but without any intention of ever using it for the purpose of a public railroad, it was *held* that, the fee being in the company, the portion so abandoned was subject to levy of execution, so far as the question of discontinuance and abandonment was concerned.

ACTION OF EJECTMENT, which was referred and the referee reported as follows: This action is ejectment for the recovery of a tract of land lying in the city of Burlington, as per declaration. The land in controversy was formerly owned by the Vermont Central Railroad Company *in fee*. It constituted a part of the line of railroad from their depot on the wharf in said city, up through the ravine (so called) to Essex Junction. The defendant was in possession when the suit was commenced. Both parties claim title under the said railroad company,—the plaintiff, by virtue of the levy of an execution thereon issued on a judgment in his favor against said railroad company. Said levy was made on the 22d of May, 1865, and the premises were not redeemed.

The defendant claims by virtue of the levy of an execution issued on a judgment in favor of Mrs. Page against said company. Said levy was made on the 16th day of March, 1864, (and the prem-

ises were not redeemed,) with a conveyance of said premises from Mrs. Page to himself. The defendant also put in evidence deeds from the persons who sold said premises to the railroad company and from the owners of the adjoining lands at the time the premises were abandoned by the company.

The principal question in the case is, whether or not the premises in question, at the time the levy was made, under which the defendant claims, had been so far abandoned or surrendered, or were in such a condition, that they were legally subject to be taken and levied upon by the creditors of the company. No question was made but that they were in such condition at the time the plaintiff's levy was made, provided the levy under which the defendant claims was inoperative.

On this question I find that several years prior to the Page levy, the Vermont Central Railroad Company entered into an arrangement with the Rutland and Burlington Railroad Company and others interested, by which they agreed to build a road north from their said depot on the wharf through the tunnel that now is, to connect with their road, near the bridge across the Winooski north of Burlington; and on said new route being built to abandon or surrender the road through the ravine and over the premises in question. As the result of this arrangement, the said Vermont Central Company were released by the Legislature from the obligations to build the Swanton extension, so called. This arrangement the officers of the Vermont Central Company regarded as binding upon them, and they proceeded to construct the said new route, and got it so far completed that a train was run over it in the Spring of 1861; but that it was not regularly used in the transaction of the business of the company until 1862.

This arrangement would seem to be immaterial except so far as it tends to give character to the acts of the company and its officers, after the new route was completed and in full use, respecting the old route in the ravine.

The new route was used exclusively for the running of freight and passenger trains after the Fall of 1862, except for a day or two in April, 1863, when, owing to a slide of the bank on the new road, they were compelled to use the old road; but for nearly a year prior to Mrs. Page's levy, no train had been run through over the ravine route; the north end had been disconnected, and the rails for a considerable distance taken up, and this old route, for the purpose of transporting passengers or freight, had been entirely abandoned by the company, with the intent never to resume it for such purpose, and there was no occasion for such use either on the part of the company or the public.

The old depot building, which stands upon and constitutes a part of the premises in question, was not used by the company for any purpose connected with the operations of the road, but was left to itself.

Still the company retained the possession and general control of the road, for the purpose of removing the rails, which they did from time to time, as they wanted them for use elsewhere, and until they could make some satisfactory arrangement with the city of Burlington for the maintenance of the highway bridges over said road, negotiations in respect to which were continued along until the summer of 1864, and until sometime after the Page levy. Finally an arrangement was effected, and soon after, and within six months after the Page levy, the entire possession of the road was abandoned.    While the possession was thus held, it was without any intention of ever using it for the purpose of a public railroad.

There was a " borrowing pit" on the line of this road, but there was no evidence of its having been resorted to after the new route was completed.

After the company had ceased to run their trains over this old road, and down to and subsequent to the time of the Page levy, they did occasionally set empty cars on to the lower end of the road, up as far as South street, and once or twice up as far as King street, to stand until wanted, and may have set a loaded car on to the lower end when it was more convenient for the owner of the freight to take it there than at the depot.    In the summer of 1864, an engine was run up this track a considerable distance, and then run down again, whistling and making a great noise. The object of this no witness could tell, unless, as they said, it was to remind the inhabitants that an arrangement as to the bridges had not been made.

Both levies were made in good faith for the purpose of securing honest debts.

Before the Page levy was made, J. G. Smith, one of the principal managers of the company's road, was consulted and expressed a willingness that the levy should be made, and neither the company nor any of its officers have since made any objection thereto, or asserted any claim to the premises.

Upon the facts in the case, the referee decides, as a matter of law, that the Page levy is a valid levy ; that the premises in question were subject thereto, and that the defendant has a good title, and is not guilty as alleged, and is entitled to his costs.

Among the numerous documents introduced and referred to by the referee as a part of his report, was a certified copy of the rec-

ord of the levy, *Caroline Page* v. *Vermont Central Railroad Company*, March 16, 1864, certified as recorded in both town and county clerk's offices within the life of the execution. The officer's return, as stated in said copy, contained the following statement:

And afterwards, to wit, on the 16th day of March, 1864, I caused this same execution with my return thereon to be recorded in the records of lands of said town of Burlington.

And now on this 19th day of March, 1864, I return this execution, with my doings thereon, into the office of the clerk of the court from which it issued, with the sum of seventy-five cents, that the same may be recorded.

The certificates embraced in said record were as follows:

BURLINGTON, Vt., March 16, 1864.

Received for record in the town clerk's office, at 4 P. M., and recorded in vol. 31 of Land Records, page 629–631.

Attest,          J. R. HICKOK, *Town Clerk.*

WINDSOR COUNTY CLERK'S OFFICE, }
Woodstock, March 21, 1864.    }

The foregoing execution and return received and recorded this day.          NORMAN WILLIAMS,
*Clerk of Windsor County Court.*

The plaintiff excepted to the report, and the case was tried on the report at the September term, Chittenden county, PIERPOINT, C. J., presiding. Judgment *pro forma* for the defendant   Exceptions by the plaintiff.

*E. R. Hard,* for the plaintiff, argued that the land in question was not subject to the levy of execution at the time of the Page levy.

The defendant's evidence introduced before the referee did not show that the Page levy was made and perfected in conformity with the requirements of the statute. 10 Vt., 418; 19 Vt., 80; 2 Aik., 314; 5 Vt., 542.

A copy of the town clerk's certificate of his having recorded the execution, certified by the county clerk, is not legal evidence of the fact that such record was made. 2 Aik., 315. Nor is the statement of that fact in the officer's return any evidence of it. Ib. 314, 315. This being the only evidence before the referee of

the recording by the town clerk of Burlington, of the Page execution, that fact was not proved.

It is also indispensable to the validity and effectual operation of a levy, that the execution should be returned within its life to the clerk of the court or justice who issued it. 19 Vt., 83.

There is, if possible, less propriety in treating the statement on the last point, in the officer's return, as evidence that the execution was returned at any particular time, than receiving such a statement as to the recording by the town clerk ; because the statement, from which the fact of the return is to be found, must necessarily precede the fact or event itself, so that the statement is, but a prediction of something which is to occur afterwards.

This being the only thing in the case which even hints at a return of the execution, the levy, upon which alone the defendant relies to defeat the plaintiff's title, wholly fails.

*E J. Phelps*, for the defendant.

The opinion of the court was delivered by

BARRETT, J. Executions extended and levied upon real estate, with the return of the officer thereon, are to be returned into the office of the clerk of the court from which they issued, and are there to be recorded. Gen. St., ch. 47, § 23. Before being returned into that office, such executions with the officer's return are to be recorded in the town clerk's office of the town in which the land levied upon is situated. Ib. It is the officer's duty, in making and perfecting the levy, to cause such execution, and the return showing that he has made such levy, to be recorded in the town clerk's office, and also to deliver said execution and his return endorsed thereon of what he has done under said execution, by way of making the levy thereof, to the office of the clerk from which it issued. All the officer's acts by way of making the levy, including his statement of those acts in what is called his return, are official. The execution with his return becomes a record in the county clerk's office. The record *prima facie* proves the official acts recited in it ; and an authenticated copy is the evidence of such a record. This record shows that the sheriff caused the

execution of Miss Page to be recorded on the 16th day of March, 1864, in the town clerk's office of Burlington. It is so stated by him in his return.

There is embraced in this record the certificate of the town clerk of his having received for record on the 16th day of March, 1864, and of his having recorded the execution and levy in his office on that day.

In *Hubbard* v. *Dewey*, 2 Aik., 315–16, Judge HUTCHINSON said, " There is no statute that expressly requires the town clerk to certify upon a deed or execution that they have recorded the same, nor that makes any such certificate evidence of the fact ; but the practice has always been for them to make such certificates, and the same have been received as *prima facie* evidence of the fact," &c. " The most natural *prima facie* evidence of such recording is a certificate of each clerk upon the execution by him signed, that he has recorded it, according to the usual entries thus made upon deeds by the several town clerks."

That case is cited in the present argument against the record in this case being evidence that the execution and levy were recorded in the town clerk's office within the time prescribed by the statute. It was only decided in that case that a copy of the execution and levy from the town clerk's office, and a copy of the same from the county clerk's office, were evidence to prove the fact of the execution and levy having been recorded in the respective offices according to the requirements of the statute. It was not decided that a copy of the record of such execution and levy in the county clerk's office showing, by the certificate of the town clerk as well as by the officer's return, that the execution and levy were duly recorded in the town clerk's office, were not evidence of that fact.

Nor in the *nisi prius* case of *Paine* v. *Hathaway*, referred to by Judge HUTCHINSON, was it held that such a *record* would not be evidence of that fact ; but only that a regularly attested copy of the execution and the officer's return of his levy, and of the town clerk's certificate of his having recorded the same, produced from the county clerk, was not evidence to prove the fact of the recording in the town clerk's office. No wider scope can prop-

erly be given to the ruling in that case than is required by the account given of it by Judge H.; nor, if the present case stood upon the same point of the ruling in that case, should we feel much controlled by that ruling, it having been made in the progress of a jury trial.

We do not feel pressed with the remarks of Judge HUTCHINSON, predicated upon the *anachronism* involved in the sheriff's stating in his return that he had caused the execution with his return to be recorded in the town clerk's office. The statute—Gen. St., ch. 47, § 23, contemplates just that;—but obviously it did not contemplate that his return thus recorded should state more than had been done up to the time of causing the execution and return to be recorded. His official custody of the execution continued till he had returned the execution, fully executed, so far as his duties were concerned, into the office from which it issued, and it was his province to endorse, by way of return, all his official acts down to the moment of delivering finally the execution into the clerk's office. It was his province and his official duty, after he had caused the execution and his return of the levy to be recorded in the town clerk's office, to state that fact as a part of his return, before delivering it back to the county clerk. This was so done in the present case, and involves no anachronism. So far, then, as this fact is concerned, his return would be evidence of it, and when made matter of record in the county clerk's office, an authenticated copy of that record would also be evidence to the same intent. We hold then that by reason of the record's showing, both by the certificate of the town clerk and the return of the officer, that the execution with the officer's return was duly recorded in the town clerk's office, such record is *prima facie* evidence of that fact.

The record shows, without resort to the officer's return, that the execution was duly returned to the county clerk's office and there recorded. So we have no occasion to further consider the question made in the argument, whether that fact could be shown by the officer's return. The substantial question is, whether the property was subject to levy at the time it was levied on by the Page execution.

We do not regard it necessary to decide whether the road-bed and depot grounds owned in fee by the railroad company, may or may not be privileged against the executions of creditors under certain circumstances. In this case the exemption is claimed on the ground that at the time of the Page levy the use of the land for road-bed and depot accommodations had not been wholly discontinued and abandoned prior to said levy.

We think the report shows that such use had been thus discontinued and abandoned both in fact and intent. It is true the company held possesssion—but this was incident to their title and ownership of the property. They were not holding it in use for any purpose of public service, nor for any purpose of use as a railroad. The only use the company put it to was in exercise of means and measures to get rid of its character as a railroad, viz : to take up and carry away the rails, and to get terms with the town as to obligations touching street bridges, as affected by the complete abandonment of the old track as a railroad. "While the possession was thus held, it was without any intention of ever using it for the purpose of a public railroad."

The judgment is affirmed.