## JAMES WILSON v. CHARLES WHEELER.

*Voter. Who Eligible to Office of Constable. List. Evidence. Appraisal.*

1. Under the statute of 1869, every male citizen of the age of twenty-one years subject to taxation in a town and resident therein is a voter in the town meeting of such town; and this is so although at "the annual assessment next preceding" he was a resident of another town, owning real estate in both towns, and assessed in b'th; and is eligible to the office of constable.

2. Meaning of the terms, *list, grand list.*

3. The only record evidence offered to establish the fact of the defendant's having been sworn was a copy of the record of his election, in which the word "sworn" appeared immediately after his name. *Held,* sufficient proof that he was sworn as the law requires. Parol evidence was also admissible to prove it.

4. The fact that the instrument written in the form of a bond but not under seal, which one executed who had been elected constable, does not occasion a vacancy in the office.

5. Copies of the warning and proceedings are admissible to prove the election of constable and listers, and that they were sworn.

6. The quadrennial grand list was admissible in evidence in an action against a constable for selling property for taxes.

7. The validity of a list as a basis of taxation is always upheld where it has appeared that it was made in good faith and the only errors complained of were the result of mistakes in judgment on the part of town officers; thus, although it is evident that the listers did not comply, with the law in the ascertainment and appraisal of the real and personal estate, in neglecting to set in the list $500 in money that should have been set to a ratable inhabitant, but no intentional wrong or fraud was attempted by them. *Held,* that the list was not thereby invalidated.

8. Act of 1869, voter in town meeting, construed.

TRESPASS with count in trover. Trial by jury, February Term, 1882, REDFIELD, J., presiding. Pleas, general issue, and justification as tax collector of the town of Brownington, and special replication by plaintiff. After the evidence was in, both parties in open court agreed to submit all issues of fact to the court. A verdict was ordered for the defendant. As to the question of whether there was a vacancy in the office of constable the exceptions stated:

" The defendant also offered in evidence to show that said Wyman accepted said office and duly qualified for the discharge of the duties thereof by giving bond as required by law, an instrument written in the language of a bond for the faithful discharge of the duties of constable and collector, by said Wyman, for the term aforesaid, signed by said Wyman and two sureties, and properly witnessed, but it was conceded by the defendant that said instrument had never been sealed by said Wyman or said sureties. To the admission of this instrument the plaintiff objected, for that it was not a bond as required by the statute. Subject to the exception of the plaintiff, the same was admitted by the court. It appeared that this instrument was accepted by the selectmen of Brownington within ten days after the election of said Wyman as constable and collector for said term, and that he gave no bond as constable and collector during said term, unless said instrument is a sufficient compliance with the law. The defendant further offered in evidence the several warrants and rate-bills mentioned in his pleas, together with what purported to be the receipts of said Wyman as constable and collector for the same, for the purpose of showing that said Wyman received said warrants and rate-bills for the collection of taxes as alleged in said pleas, to the admission of which the plaintiff objected, for that the said Wyman having failed to give a bond as required by law, the office of constable and collector of Brownington had become vacant, and the said Wyman then had no authority to receive and hold for collection said several warrants and rate-bills, and that the same were irrelevant and immaterial."

As to the admission of the grand list:

" The defendant offered in evidence the quadrennial grand list of said town for A. D. 1874, but offered no evidence tending to show that the appraisal forming the basis of said quadrennial grand list for 1874, or that said grand list was lodged in the town-clerk's office of said Brownington on or before the 15th of June, A. D. 1874, as required by law."

As to the appraisal:

" The plaintiff asked each lister on cross-examination the following question, in substance: ' In taking the grand list for the town of Brownington for the years 1874 and 1878, how did you listers appraise the property,—whether at its true and just value in money, or otherwise?' The defendant objected to this question for the reason that the list being regular in form and duly sworn to by the listers in the form of oath prescribed by law, the

grand list and oath appended were conclusive upon this subject, and for that this subject could not be inquired into by parol evidence. The court, subject to the objection and exception of the defendant, admitted the question and parol evidence upon this matter; and from evidence so admitted it appeared that one lister from each town in the county met at Irasburgh between March meeting and April 1st in each year in which the grand lists of Brownington are involved in this case, and agreed upon the then value of an average article of each class of property to be appraised in that year, and communicated such agreed value to every lister in Orleans county; that the same method was adopted in every county in the State, and had been for a great number of years then next preceding; that the listers of said Brownington in making the grand list of said town each year involved in this suit, *honestly and in good faith* endeavored to make their appraisal of each and every article as near to its true value as possible, taking such agreed value of the county board of listers as the true value of an average article of each class, properly and fairly increasing or reducing each particular article as it was above or below an average of its class. The whole list each year was made in this manner. It also appeared from a certified copy of the journal and proceedings of the State Equalizing Board for 1878, put into the case, that the valuation of said Brownington as first fixed by its listers was reduced two per cent. by said State Board of the year 1878. It also appeared that by adopting this method in making the quadrennial appraisal and quadrennial grand lists for A. D. 1874, and A. D. 1878, and the annual grand list for A. D. 1878 of said town, the listers purposely estimated and appraised the real estate and personal property, including money and debts due from solvent debtors, at about two-thirds the actual value thereof in money, and at about two-thirds the value at which they would then have appraised the same in payment of a just debt due from a solvent debtor, and set the same in said grand lists at such estimated and appraised valuation. There was no evidence tending to show any design or intent on the part of said listers, or either of them, to make the lists of persons taxable in said Brownington lower for the same property than the average basis of appraisal agreed upon for Orleans County, or the State at large; but on the contrary it appears that it was the honest intention of said listers to appraise all the taxable property in said town of Brownington as near as possible to the average valuation of the same kind and quality of property throughout the County and State, and that they acted in good faith in carrying out such intentions. There was no evidence in the case tending to show

that said appraisals in said Brownington, and the grand lists based thereon involved in this case, were not equal among the citizens of said Brownington, or that the appraisals and grand lists of said town were not equal and fair as compared with the other towns in Orleans County, or in the State, or that said grand lists were either of them so made as to cast any greater or less burden of public taxation upon the taxpayers of said Brownington than upon the taxpayers of any or all other towns in the State.
    . . .     It appeared   . . .   that said listers in taking and making the annual list for A. D. 1878, purposely omitted from said grand list about five hundred dollars in money belonging to a ratable inhabitant and taxpayer of said town, who was the grandfather of one of said listers, after his list including said money had been taken and before the grand list book was filled out.    This sum of about five hundred dollars was omitted and stricken from the list by said listers before the day set for hearing parties aggrieved, and was done at the solicitation of one of said listers, who was a grandson of the party so assessed, and who represented to the other listers that his said grandfather was ' an old man and he didn't think he had any more money than would support him through life '; and it did not appear that any other objection was made to such assessment, and it was not claimed on trial by the defendant that said money was not subject to taxation in said town of Brownington.
    " The said town of Brownington elected three listers at the March meeting in 1878, and no more were ever elected to serve during that official year.    In taking the annual list of the plaintiff for A. D. 1878 only two of the listers visited his premises and made a personal inspection of his stock and other personal property listed to him.    The other lister was engaged in taking the grand list in another part of the town and did not see the plaintiff's stock to appraise it, and had nothing to do about taking the plaintiff's said list, except to talk the matter over with the other two listers at a time subsequent to the day when the memoranda of articles of plaintiff's property were taken by two of said listers and then only to see if the value had been taken upon the basis previously agreed upon by them."

*L. H. Thompson,* for the plaintiff.

The defendant was not a voter, and was therefore ineligible to the office of constable.    Gen. St. 1036 (No. 50 of 1869) ;  R. L. s. 2644;  Gen. St. c. 15, s. 13;  *Cummings* v. *Clark,* 15 Vt. 657;  *Courser* v. *Powers,* 34 Vt. 518.    Number 58 of the laws of 1872

requires that constables shall be sworn before entering upon the duties of that office, and that the town-clerk shall make a record thereof. The act is mandatory in all its provisions. The word "sworn" after the name of the defendant in the record of his election to said office, and after the name of Wyman, and after the names of said listers, as detailed in the exceptions, is not such a record of the taking of the official oath as said statute contemplates or requires. It does not disclose the kind nor the nature of the oath, nor by whom administered, but these essential requisites are left wholly to implication or conjecture. Under this statute it is not competent to prove the taking of said oath by parol. No legal bond was given. The plaintiff had no legal grand list in Brownington. *Ayers* v. *Moulton*, 51 Vt. 118; *Reed* v. *Chandler*, 32 Vt. 286; *Houghton* v. *Hall*, 47 Vt. 334.

The *intentional* appraisal by the listers at only about two thirds of its value of all the property included in any and all of the grand lists, and the placing of such property in said lists at such valuation render the lists invalid as a basis of taxation. Cooley Taxation, 152, 153, n.; 10 Wis. 263.

*Edwards, Dickerman & Young*, for the defendant.

The word "sworn" when applied to a public officer, as constable, means that he is sworn to the faithful discharge of his duties. R. L. s. 14. Parol evidence was admissible to prove that the listers were sworn. *Day* v. *Peasley*, 54 Vt. 310; *Blodgett* v. *Holbrook*, 39 Vt. 336; *Hayes* v. *Hanson*, 12 N. H. 284; *Converse* v. *Porter*, 45 N. H. 385. The fact that the bond was not sealed does not affect this case. *Richmond* v. *Woodard*, 32 Vt. 833; *Weed* v. *Abbott*, 51 Vt. 609; *Banks* v. *Smith*, 5 Allen, 413; *Smith* v. *Messer*, 17 N. H. 429; *State* v. *Bates*, 36 Vt. 389; *Buckman* v. *Ruggles*, 15 Mass. 180.

The value of property is what it will bring in money on a fair average sale in the locality where it is to be appraised. The value to be set in a grand list to make it legal is not the exact value that the unqualified and uninformed judgment of one man would place upon the separate articles going in to make the list, but is the value that the whole board of listers, after full consul-

tation with all the knowledge they can severally bring to bear, agree in good faith to place upon it ; and the legislature is so careful to secure an equal average appraisal throughout the State that it has established the county and the state equalizing board with authority to increase or reduce the valuation of each town or county as shall seem necessary to make the results equal; and the case shows that this appraisal of real estate of which the plaintiff complains, because too low, was reduced still lower by the State equalizing board.   The only result of appraising it higher in the first instance would have been to necessitate a larger reduction by the averaging committees.   *Wilson* v. *Seavey*, 38 Vt. 321 ; *Henry* v. *Chester*, 15 Vt. 460 ; *Spear* v. *Braintree*, 24 Vt. 414 ; *Macomber* v. *Center*, 44 Vt. 237 ; *Houghton* v. *Hall*, 47 Vt. 334 ; *Watson* v. *Princeton*, 6 Met. 600 ; 21 Pick. 78 ; 43 Conn. 312 ; 17 N, H. 427.

The opinion of the court was delivered by

ROYCE, J.   There were many exceptions taken upon the trial, but we shall only consider those that have been insisted upon in this court.   It is insisted in the first place that the defendant was ineligible to the office of constable and collector of taxes at the time of his election at the March meeting in 1880.   On the 1st day of April, 1879, and for several months thereafterwards, the defendant with his family resided in the town of Morgan, and his poll, personal property, and some real estate were set in the grand list of that town for that year.   In July, 1879, he removed to Brownington with his family, and has since resided in that town.   The defendant owned real estate in Brownington in 1879, which was set to him in the grand list of that town for that year, and was an inhabitant of that town at the time of his election.

The act approved Nov. 11th, 1869, G. S. page 1036, defining who shall be voters in town meeting, provides that " every male citizen of the age of twenty-one years whose list shall have been taken in any town or city at the annual assessment next preceding any town or city meeting shall, during their residence in such town or city, be legal voters in town meeting."   One of the officers which towns are required by sec. 2658, R. L., at the annual

town meeting to choose from among the inhabitants thereof, is a constable and collector of taxes. It is claimed that the test of eligibility is the qualification to vote in the meeting at which the officer is elected. The defendant, being an inhabitant, had the undoubted right to vote if he had such a list at the annual assessment next preceding that meeting, as is required by the act of 1869. The terms " list" and " grand list," as they are used in our statutes, mean a schedule of the polls and ratable estate of the inhabitants upon which taxes are to be assessed. A list that only represents real estate answers the requirement of the statute as fully as would a list that represented the poll and personal property. It is obvious that the intention of the law was to allow such persons as are subject to taxation in towns and are residents therein to vote in the annual meetings of such towns. The defendant, being an inhabitant of the town of Brownington at the time of his election, and having a list in said town upon which he was subject to be taxed, was eligible to the office to which he was elected.

The ground of the second exception is that there was no competent evidence that the defendant was sworn as required by No. 58 of the laws of 1872. The law requires that constables, grand jurors and listers, before entering upon the duties of their offices, shall be sworn to a faithful discharge of the same, and the town clerk is required to make a record thereof. The only record evidence offered to establish the fact of the defendant's having been sworn was a copy of the record of his election, in which the word " sworn" appeared immediately after his name. In section 14 of chapter 1, R. L., title, " Construction of Statutes," it is said that the word " sworn," when applied to public officers required by the constitution to take certain oaths, shall refer to those oaths ; and when applied to other officers it shall mean sworn to the faithful discharge of the duties of their offices before a person authorized to administer oaths. Applying that construction to the word " sworn " as it occurs in this record, it does appear that he was sworn as the law required.

Under the law of 1872 listers are required to be sworn in the same manner as constables ; and it was held in *Day* v. *Peaslee*, 54

Vt. 310, that in the case of listers it was not necessary that the· oath taken by them should be recorded, and that it was no part of their duty to procure such record to be made ; and in *Blodgett* v. *Holbrook*, 39 Vt. 336, that it was competent to prove by parol that the listers were sworn to the truth of the certificate appended to a grand list.

It is claimed that the neglect of Wyman, who was elected constable in 1878, to give such a bond as the law required occasioned a vacancy in the office. It was held in *Weston* v. *Sprague and Edmunds*, 54 Vt. 395, that when one is elected constable it is the duty of the selectmen first to move in the matter and require a bond, fix its amount and the kind of security ; so whether the security that was given by Wyman answered the requirements of the law or not, the office would not become vacant until further security had been demanded by the selectmen.

The objections that were made to the admissibility of the copies of the warnings and proceedings of the March meetings in 1874 and 1878 for the purpose of showing the election of constable and listers for those years, were properly overruled ; and what has been said as to the evidence which those records furnished of the qualification of those officers need not be repeated. The lists which were put in evidence, we think were admissible. They were *prima facie* legal without being validated by the legislation of 1878 and 1880.

Conceding that it was allowable to show how the listers appraised the property and made up the lists, the more important question arises upon what is shown as to the manner in which they were made up. It is evident that the listers did not comply with the law in the ascertainment and appraisal of the real and personal estate, and in neglecting to set in the list $500 in money that should have been set to a ratable inhabitant. It does not appear that any intentional wrong or fraud was attempted by the listers, but such errors as were committed by them were errors of judgment. The question presented is whether such errors invalidate a list as a basis for the assessment of taxes so that a collector cannot justify under a warrant commanding him to collect them. In *Henry* v. *Chester*, 15 Vt. 460, it was held that a list

'would not be rendered void by any error of judgment in the listers ; and in *Spear* v. *Braintree*, 24 Vt. 414, that where errors and defects in a list are accidental or *bona fide*, it will not render the list void as a basis of taxation. This court has always upheld the validity of lists as bases for taxation where it has appeared that they were made in good faith and the only errors complained of were the result of mistakes in judgment on the part of the town officers. Any holding that should require of the listers a strict and technical compliance with all the requirements of the law in the making up of lists would invalidate most that have been made in the State, and upon which all the State and municipal taxes have been assessed and collected for many years. The tax payers have a remedy against the officers of the towns for any neglect of official duty that operates to their injury, and they should be remitted to that remedy when there is no fraud shown in the making up of the list. To require the rule that is claimed by the plaintiff would render it impracticable if not impossible to make lists upon which taxes could be assessed and money procured to carry on the State government and pay the necessary expenses of the various municipalities in the State. It is said in Cooley on Taxation, p. 154, to have been decided in a number of cases that accidental omissions from taxation of persons or property that should be taxed, occurring through the negligence or default of officers to whom the execution of the taxing law is entrusted, would not have the effect to vitiate the whole tax. The execution of such laws is necessarily entrusted to men, and men are fallible,—liable to frequent mistakes of fact and errors of judgment. If such errors on the part of those who are attempting in good faith to perform their duties should vitiate the whole tax, no tax could be collected.

The judgment is affirmed.