## ANDREW J. WILLARD *v.* AVERY D. PIKE.

*Taxation. Evidence. Presumption. Lister, Power of, to alter List.* R. L. ss. 331, 348, 352. *Check-list.* R. L. s. 2656, ch. 6. *Town Meeting.* R. L. s. 70.

1. EXCEPTION. PRACTICE. A party is not entitled to an exception, when he allows grand list books to be admitted as evidence, "subject to all legal objections," without specifying ·the defects. Such a general objection only saves the right to specific rulings on the defects that are called to the attention of the court before the case is submitted to the jury. Nor was it fatal error to exclude voluminous inventories offered as bearing upon the good faith of the listers without stating in what respect they bore upon it, although one of them, on examination, was found admissible.

2. EVIDENCE.—CERTIFICATE. What purported to be a certificate of the president of the county equalizing board, required by sec. 303, R L., and in proper form, was admissible and *prima facie* sufficient, under the rule, that it is presumed that a man acting in a public capacity was properly appointed, etc.

3. ALTERATION OF LIST. An alteration of the list by the listers, after the time provided for its completion, unauthorized by law, does not render the whole grand list void.

4. TOWN MEETING. CHECK-LIST. The check-list used at the annual town meeting, with proper alterations, may be used at a special meeting to elect listers to fill a vacancy, and need not be posted longer than the notice of the meeting. R. L. s. 2656, and ch. 6.

5. EXCEPTION. PRACTICE. When the reasons specified as an objection to the admission of the grand lists as evidence are not sufficient, the exception will not be sustained although the list for other reasons is void.

6. STATUTE. MANDATORY, DIRECTORY. LIST. Statutory regulations which relate to the rights of the taxpayer are conditions precedent to the legality of the tax, but those for the information of the lister to promote method are directory; thus, the list in contention was very defective in form, tested by section 348 R. L., but contained the necessary elements of a grand list; what was wanting could be readily supplied by computation, and it *was held* valid in this respect.

7. SCHOOL COLLECTOR. ELECTION. UNION DISTRICT. School district officers must be elected at the annual meeting on the last Tuesday of March, as provided by section 519, R. L.; and a collector cannot justify as a *de facto* officer even if elected at any other time; thus, three districts were formed into one by a vote of the town under section 545 R. L., instead of section 573, requiring a two-thirds vote of each district; and, assuming to be a union district, elected the defendant its collector at a time required by section 575 for union districts; *Held*, that it was not a union district, and, therefore, that defendant

was not a legal officer and could not justify; but that a district could vote taxes at any meeting properly warned,—section 559.

8. TAXATION.- EXEMPTION. ACADEMY. The St. Johnsbury Academy, incorporated and operated for the purposes of general education, owned certain buildings obtained for its use in carrying on the school, a part of which was occupied by its students for a club house and a boarding house, a part by one of the professors, and the remainder rented; and tuition was charged only for the maintenance of the institution; *Held*, that the buildings are exempt from taxation under the statute,—R. L. s. 270,—which affords exemption to property "used for public, pious, or charitable uses."

9. EXEMPTION. Property actually devoted to pious or charitable uses is exempt, although the deed or record title does not show the use.

10. AQUEDUCT. TAXATION. The property of an aqueduct company, consisting of ponds, springs, a reservoir, and iron pipes by which water was brought into a village, was properly set in the list as real estate.

11. CORPORATION. STOCK. TAXATION. The stock of a corporation cannot be assessed to the stockholders when it does not exceed in value the value of the property which it represents and which is assessed to the corporation. R. L. s. 288.

TRESPASS and trover for the conversion of four shares of bank stock. Plea, general issue and notice. Trial by jury, June Term, 1885, Caledonia County, Ross, J., presiding. Verdict and judgment for the defendant.

*Bates & May*, for the plaintiff.

If the listers, the county, or state equalizing board failed in the performance of any essential requisite, or if proof failed to show it, the list was never a legal basis of taxation. *Houghton* v. *Hall*, 47 Vt. 333. The certificate of the president of the equalizing bard was not admissible. Best Ev. p. 456; *Moore* v. *Quint*, 44 Vt. 97. The listers had no authority to alter the list after the 15th of May. *Bellows* v. *Weeks*, 41 Vt. 590; *Woodward* v. *Isham*, 43 Vt. 123; *Wheeler* v. *Wilson*, 55 Vt. 446; 34 Vt. 352. Section 352, R. L., was aimed against reckless addition to the list. The grand list was void because there was no compliance with the law requiring an abstract of the list to be lodged in the town clerk's office. Book "F," the list of 1883, has no certificate of the lister, nor oath as to what it was.

There was no legal check-list when the listers were elected. R. L, ss. 65, 69, 2056; *Attorney-Gen.* v. *Simonds*, 111

Mass. 256. School district No. 1 was not a union district. *Greenbanks* v. *Boutwell*, 43 Vt. 207, 212 ; *Barnes* v. *Ovitt*, 47 Vt. 316 ; R. L. ss. 519, 573 ; 11 Vt. 385 ; 4 Zab. 653 ; 7 Conn. 214 ; 27 Me. 509 ; 48 Vt. 266. The law fixed the time for holding the meeting, and it cannot be held at another time. *Warner* v. *Mower*, 11 Vt. 385 ; *Society* v. *Pilling*, 4 Zab. 653 ; *State* v. *Smith*, 48 Vt. 266. The listers omitted large quantities of property from the lists without warrant of law. The academy, boarding house, club house, etc., were not exempt from taxation. The corporation is purely a private one ; it is in no sense public. The public have no control over its management. It is run for profit ; the scholars pay tuition. The statute,—R. L. s. 270,—does not exempt the property of a purely private nature. *Bank* v. *Memphis*, 6 Bax. (Tenn.) 615 ; s.c. 32 Am. Rep. 530 ; *Church* v. *Assessors*, 12 R. I. 19 ; s. c. 34 Am. Rep. 597 ; *Phillips Exeter Academy* v. *Exeter*, 58 N. H. 306 ; s. c. 42 Am. Rep. 589 ; *People* v. *Cemetery Co.* 86 Ill. 336 ; s. c. 29 Am. Rep. 32 ; 80 Ill. 333 ; 22 Am. Rep. 187 ; *Pierce* v. *Cambridge*, 2 Cush. 711 ; *State* v. *Ross*, 4 Zab. 497 ; *State* v. *Leester*, 28 N. J. L. 103 ; *State* v. *Axtell*, 41 N. J. L. 117 ; *Cooley Tax.* 540, 547. The other property,—the Henry Fairbanks purchase,—was not exempt. There had been no deed to any pious or charitable uses. *First Church* y. *New Orleans*, 34 La. Ann. 259 ; s. c. 31 Am. Rep. 224 ; 36 La. Ann. 804 ; 51 Am. Rep. 14 ; 85 Penn. St. 288 ; 27 Am. Rep. 650 ; *Lowell Meeting House* v. *Lowell*, 1. Met. 538.

*Ide & Stafford*, for the defendants.

The court ruled correctly as to the admission of the certificate of the president of the county equalizing board. *State* v. *Potter*, 52 Vt. 33 ; *McComber* v. *Center*, 44 Vt. 235 ; *Wellston* v. *Seavey*, 38 Vt. 221 ; *Bill* v. *Dow*, 56 Vt. 562 ; *Briggs* v. *Whipple*, 7 Vt. 15.

The directions of the statute in regard to the details of the making, posting, and manner of using the check-list are direc-

tory, not mandatory, and an irregularity in those respects which has worked no harm and impaired no right, would not impair an election. *Barnes* v. *Board of Supervisors*, 51 Miss. 305; *Wheelock's Case*, 82 Penn. St. 297; *Dale* v. *Erwin*, 78 Ill. 170; *State* v. *Ferguson*, 2 Vroom, 107; *McKinney* v. *O'Connor*, 26 Tex. 5; *Sprague* v. *Norway*, 31 Cal. 173; *Hulseman* v. *Rens*, 41 Penn. St. 396; *Pratt* v. *People*, 29 Ill. 54; *Cleland* v. *Porter*; 74 Ill. 76; *People* v. *Police Commissioners*, 57 How. Pr. 445; *Rounds* v. *Smart*, 71 Me. 380; *Collins* v. *Huff*, 63 Ga. 207; *People* v. *McManus*, 34 Barb. 620; *Day* v. *Kent*, 1 Oregon, 123; *State* v. *Stumpf*, 21 Wis. 579; *Re Census Superintendent*, 1 New Eng. Rep. 156. The regularity of the election of the listers cannot be assailed in this collateral manner. *Sudbury* v. *Heard*, 103 Mass. 543.

The court properly refused to rule as requested, that Book "H" was not the grand list which the law required, and properly ruled upon the subject matter of that request. The jury, under the instructions, have found that that book was made up and completed as the grand list of the town, and filed in the town clerk's office in a completed condition as such list on the 15th day of May, 1884. *Canal Co.* v. *Rockingham*, 37 Vt. 622; *Torrey* v. *Milbury*, 21 Pick. 64; *Blackburn* v. *Walpole*, 9 Pick. 97; *Westhampton* v. *Searle*, 127 Mass. 502; *Sprague* v. *Bailey*, 19 Pick. 436; *Wilson* v. *Wheeler*, 55 Vt. 446. The aqueduct is subject to taxation as real estate. *Canal Co.* v. *Rockingham, supra; Boston Man'f'g Co.* v. *Newton*, 22 Pick. 22; *Pingree* v. *County Com's*, 102 Mass. 76. The ruling as to taxing the stock of the corporations was correct. Cooley Tax. 165; *Bank* v. *Portsmouth*, 52 N. H. 389. The academy and club house, etc., were exempt from taxation. *State* v. *Gaffney*, 34 N. J. 133.

The alterations made by the listers did not invalidate the list. *Bellows* v. *Weeks*, 41 Vt. 590.

The opinion of the court was delivered by

VEAZEY, J. The action is trespass with a count in trover

for the conversion of four shares of bank stock. The defence was a justification under tax warrants. The trial was by jury, and the verdict was for the defendant. The defendant, to show the validity of the taxes, put in evidence the grand list books of his town, St. Johnsbury, and the field books, for 1882, '83, and '84, and they were received subject to all legal objections. No general exception was taken or allowed, and ought not to have been, to this general ruling and admission of evidence. It was the duty of the plaintiff's counsel to specify wherein these books were defective, if he wanted an exception to their admission. It was not the duty of the court to search the books for defects. The general objection was sufficient to save the plaintiff's right to specific rulings on defects that were called to the attention of the court before the case was finally submitted to the jury, but it went no farther. *Hills* v. *Marlboro*, 40 Vt. 648.

The plaintiff's points are so numerous we follow the order of the brief, lest some may be omitted.

I. The defendant offered in evidence a certificate, or what purported to be that, of the president of the county equalizing board in book "B." No proof was offered as to identity of handwriting, or who in fact was the president of that board.

The court held that the certificate being in the form required by law and signed by a person professing to act as president of the board, the defendant need not prove more, and that this proof was *prima facie* sufficient, to which the plaintiff excepted.

That certificate is required by sec. 303 of the Revised Laws to be endorsed on the list of the town, and signed by the president of the board, who was a public official, all in the form precisely as this certificate showed.

It does not appear, and no claim is made, that the list thus certified was not found in the hands of the proper depository. We hold that the ruling was correct. As to town and county clerks, magistrates and other officers having prescribed statutory duties which they have to authenticate by attestation or

certificate, proof of the officer's handwriting, and that the person is the officer he purports to be, is not required in first instance. *Lemington* v. *Blodgett*, 37 Vt. 210; *Hubbard* v. *Dewey*, 2 Aik. 312; *State* v. *Potter*, 52 Vt. 33; *Benedict* v. *Heineberg*, 43 Vt. 231.

It is a general presumption of law that a man, acting in a public capacity, was properly appointed, and is duly authorized to perform the duties prescribed by law for such official. This is so under the maxim, *Omnia praesumuntur rite et solenniter esse acta donec probetur in contrarium.* Broom, p. *849; *Rex* v. *Verelst*, 3 Camp. 432; *Bank of U. S.* v. *Dandridge*, 12 Wheat. 69.

II. It appeared that the listers of 1883 and 1884 made some alterations in the lists after the time specified by law for them to be completed and filed, but not in the manner provided by law. The plaintiff claimed that any such material additions or alterations of the lists were illegal, and would render the whole grand list void. The court held that while the listers could legally make additions only in the manner specified in the statute after May 15, yet if they made them not in that manner, such alterations or additions, while they might render the listers liable, would not render the grand list void, to which the plaintiff excepted.

In *Bellows* v. *Weeks*, 41 Vt. 590, PIERPOINT, Ch. J., speaking for the court, says: "When they had discharged their duties as listers, and had deposited the list with the town clerk, they had no further control over it, or authority in respect to it. Therefore their relation to it was precisely the same as that of any other inhabitant of the town. This principle was expressly decided in *Downing* v. *Roberts*, 21 Vt. 441. In the same case it was held that alterations made by persons other than the listers were of no effect, and did not invalidate the list as made and deposited by the listers; that it was like the alteration of a written instrument by a stranger." The logic of these two propositions leads to the conclusion that a list tampered with, even by listers, out of time and

unauthorized, is not thereby void, but stands good as made and deposited by the listers in time ; for, as the late Chief Justice further said in the same case, " after the list is returned to the town clerk's office, the listers would seem to be as much strangers to the instrument as any other persons," except in supplying omissions as provided in section 352, R. L.

In this case there was no alteration of the plaintiff's list.

We think there is no ground for sustaining this exception.

III. The listers elected at the annual town meeting, held March 6th, 1883, having resigned, the selectmen called a special town meeting for March 27th, 1883, at which a new board was elected, being the board whose action is here attacked.

Check-lists to be used at the special meeting were posted either March 14th or 15th, 1883. The check-list thus posted, as amended by the selectmen, was used at the special meeting without questions then made. The plaintiff asked the court to rule that the election of listers at the special meeting was illegal, for the reason that the town had no legal check-list. The court ruled otherwise, to which the plaintiff excepted.

The objection to the check-list as urged, is that it was not posted thirty days before the special meeting. The proper inference from what is stated in the bill of exceptions, is, that the check-list posted and used at the special meeting was the same, with amendments or corrections, that was posted thirty days before, and used at the annual meeting previously held. Section 2656, R. L., provides that a check-list shall be " made and used in town meetings in the manner provided for check-lists of voters in freemen's meetings."

The statute, ch. 6, R. L., provides for the making of the check-list and the posting thereof thirty days before a freemen's meeting, but further provides in section 70 that at certain special elections " the check-list used at the preceding freemen's meeting shall be used with such alterations as the board of civil authority, having given six days' notice of a meeting for that purpose, may make prior to the day of such election,"

Willard *v.* Pike.

Special elections at freemen's meetings, under secs. 70 and 72, R. L., can be held on six days' notice. Special town meetings require twelve days' notice.

It is plain, first, that the same check-list, with proper alterations, may be used at a special town meeting as was used at the annual meeting. We also think that owing to the great embarrassment that might be occasioned by requiring a check-list for a special meeting to be posted thirty days before, and in the absence of any express provision to that effect, it was not the intention to require a posting longer than the notice of the meeting. The occasion for special town meetings often arises suddenly, and demands immediate action, as in this case, where the listers were required to enter upon their duties by the first of April, and had a limited time to complete them.

Neither is there any necessity for so long a posting of the list. It is completed at the start, subject only to alterations. To require thirty days' posting would in effect require thirty days' notice of special meetings. The statute by implication, though not so expressed, we think, requires a posting of the list for special meetings as well as for the annual meeting, but not for a greater period than for the notice of the meeting. This view renders it unnecessary to decide what would be the effect of a failure to post the list for the time as specified; and whether the directions as to the details of the making, posting and manner of using the check-list are directory or mandatory.

The authorities on this point are cited at length in the brief of defendant.

IV. The plaintiff asked the court to rule that book "H" was not the grand list which the law required. The court ruled that this book contained the necessary elements of a grand list, if the jury should find that the listers made it up and completed it as the grand list, and filed it in the completed condition at the time required by law, to which the plaintiff excepted. This was the only exception taken in respect to this book. The defendant's evidence tended to show that it was filed first on April 25th, 1884, as the abstract of personal

lists required by section 331, R. L., and again, after being corrected and completed, on May 15th, 1884, in its present shape, as the grand list of the town. No question was made below that this book was not properly authenticated or duly filed as the abstract of personal lists. One objection urged to it as a grand list is that it is not a compliance with section 348, R. L. That section provides that " the list, when completed, shall contain the following particulars," which are therein specified in eight paragraphs.

The substantial question is whether this section, so far as it pertains to the form of the list in its subdivisions, its additions and deductions, is directory or mandatory.

On this point *Torrey* v. *Millbury*, 21 Pick. 64, is instructive. Chief Justice SHAW there says : " Some of the regulations relating to the assessment of taxes are conditions precedent to the legality of the tax, and others are directory merely ; that those measures, which are intended for the security of the citizen, or insuring an equality of taxation, and to enable any one to know with reasonable certainty for what polls and for what real and personal estate he is taxed, and for what all those who are liable with him are taxed, are conditions precedent. * * * But many regulations are made by statute designed for the information of assessors and officers, and intended to promote method, system and uniformity in the modes of proceeding, the compliance or non-compliance with which does in no way affect the rights of tax-paying citizens. These may be considered directory." In that case there was a failure to carry out in distinct columns the values of the real and personal estate and their reduced values, as the statute provided ; but there was sufficient stated so that by computation all the results required could be ascertained ; and the tax was held valid. In the same line is *Blackburn* v. *Walpole*, 9 Pick. 97 ; *Westhampton* v. *Searle*, 127 Mass. 502 ; *Bellows Falls Canal Co.* v. *Rockingham*, 37 Vt. 622 ; *Wilson* v. *Wheeler*, 55 Vt. 446.

Book " H " did not comply in form with the provisions of

section 348, but we fail to see wherein it did not contain the "necessary elements of a grand list." It contained the name of each taxable person, and against it the amount of his poll, if any, and the quantity and value of his real estate, with such description of it as would indicate into what class it belonged, and the village and district in which it was situated, as indicated by letters and figures, and the value of personal estate taxable in town after deduction made for debts owing, nothing being carried out if there was nothing left after such deduction. It lacked only those features which computation from what was given would readily and surely supply. There was no omission in formal compliance that could possibly operate to the prejudice of any taxpayer.

In form as a grand list, as provided in section 348, the book was very defective ; but we think those provisions, so far as they pertain to form only, come within the class that SHAW, Ch. J., described as directory, and are not conditions precedent to the validity of a tax assessed upon such list.

Further objection is urged because the listers took the book of abstracts of personal lists required to be filed April 25th and made it over, and again filed it as the grand list. It appears that this book, as an abstract of personal lists, though filed seasonbly in the town clerk's office, was in no way authenticated as such by the listers, and was taken right out by them after being deposited there, and was kept in their hands, and worked over into the grand list.

If objection had been taken on this ground in the County Court, it would be fatal, so far as now appears ; as this court has held in two cases heard at the present term—[Smith v. Hard, ante, 13, and Bartlett v. Wilson, ante, 23]—that the abstract of personal lists must be authenticated by the listers as such when filed ; and we have no doubt but it should remain in the clerk's office for the inspection of tax payers. But the bill of exceptions fail to show such objection.

The only objection in the County Court was that first above stated. The objection was to the incompleteness of the list as

it stood in book " H," not to the fact that it was defective as an abstract of personal lists, or that it had been improperly taken from the office and utilized for the grand list.

The above exception therefore is not sustained.

V. The plaintiff claims that the school district meeting, when the defendant was elected collector and the tax in question voted, was illegal, because not held on the last Tuesday of March. The full statement in the bill of exceptions on this point is as follows :

" Record of the annual school district meeting of No. 1, warning March 17, '84, and meeting Wednesday, March, 26, '84, put in and referred to. Elected Messrs. Ross, Sandford and Bradley and Mrs. Brooks, Smith and Ide, committee, and defendant Pike collector. Voted to raise 60 per cent. No other meeting was held in March, '84 ; and tax on district in dispute was raised at this meeting, and at no other meeting. The plaintiff objected that as this district No. 1 was not a union district the law required a meeting to be held on last Tuesday of March ; that this meeting Wednesday was illegal ; and plaintiff put in record of town at its annual meeting in March, 1854, consolidating Nos. 1, 2 and 3 with district No. 1. The court held that the meeting of March, 26, '84, was legal, and the action of the district binding, to which the plaintiff excepted."

It seems quite plain that the requisite steps for making this a union district had not been taken. Under section 573, R. L., contiguous school districts may form a union district,  *   *   * " if the voters of each district by a two-thirds vote, at a district meeting, agree to form such union." Section 545, R. L., provides that " a town may by vote in town meeting, divide, unite, or otherwise alter school districts therein situated." The records of St. Johnsbury, which were put in evidence, show that the alteration in this district was under the latter section, and there is nothing to show any action under section 573. The action of the town was in 1854 ; and the record shows that the town, under an article in the warning, " to see if the town will vote to unite school districts Nos. 2 and 3, or either of them, with school district No. 1," " voted that the territory

now embraced and included within the limits of school districts
Nos. 2 and 3 in town, be annexed to, and become a part of,
school district No. 1." It would seem from further statements
in the bill of exceptions, that since about 1880 this district has
assumed to be a union district, and held its annual meetings on
the day provided for such districts, being the first Wednesday
after the last Tuesday in March (sec. 575, R. L.), instead of the
last Tuesday, which is the day for the annual meeting of ordinary
districts. Sec. 519. How this came about does not appear.

But is is urged by the defendant that the annual meeting of
a school district need not be held on the day prescribed by the
statute.

Prior to 1858, the statutes did not provide when the annual
meeting should be held. The provision was that the officers
should be chosen annually at any legal meeting warned for that
purpose, and should hold their offices for one year, etc. Under
that statute it was held that an annual meeting · need not be
precisely one year from the day of the preceding meeting,
there being no particular day fixed by law for the commence-
ment of the term of office. *Chandler* v. *Bradish*, 23 Vt. 416.
The statute now provides (sec. 519, R. L.) when the annual
meeting shall be held, and that the school district officers shall
be elected at such meeting, and that their term of office shall
commence · at the time of their election, and continue until
their successors are chosen. Sec. 508, R. L. Under these
provisions, after a school district is once organized and officers
elected, there can be no lack of officers by a non-election at an
annual meeting ; therefore, nothing serious can befall a district
by a failure to have an election. There are also ample provi-
sions for filling vacancies, by appointment of selectmen until a
" new election " at a " special meeting." Sec. 518. We have
therefore a statute in terms peremptory as to time of holding
the *annual* meeting, and when adopted constituting an altera-
tion of the law in this very respect, and with other sections
constituting a code so complete as to obviate all necessity for
allowing a deviation in time arising from inadvertence. We

fail to see any good reason for holding it as simply directory as to time, and no authority is cited or been found to that effect; and we believe such holding would be contrary to the legislative intention. It could not have been intended that the failure to elect officers at the annual meeting should create vacancies; because that would be inconsistent with the provision that the term of office of the officers elected at the annual meeting should continue until their successors are chosen. There could be no vacancy while they continued in office. Section 518 applies to the filling of vacancies. It says: "When a vacancy occurs, * * * the selectmen * * * shall fill such vacancy until a *new* election is made by appointment; * * * and the district at a special meeting may make a new election." It would seem to be a distortion of the purport and spirit of that section to construe it as applying other than to the case of vacancy. There is no necessity for such construction, because there is no lapse in the law without it; and it would be no improvement.

In this case the election was not a "new election" at a "special meeting." It is urged that the right of the prudential committee, though not elected at a legal annual meeting or at a special meeting after vacancies occurred, cannot be questioned in this action to which they are not parties, as they were *de facto* such committee. *Goodwin* v. *Perkins*, 39 Vt. 598. Unless the rule that there cannot be a *de facto* officer without a *de jure* office applies, this contention of the defendant is sound as to the prudential committee, but not as to the collector of the school district, as he is the party defendant, and can justify only by showing he is a *de jure* officer. *Courser* v. *Powers*, 34 Vt. 517; *Houston* v. *Russell*, 52 Vt. 110. Upon this point we think this exception must be sustained.

But upon the question of voting a tax the statute is different. It does not restrict the voting of taxes to the annual meeting of a school district. They may be voted at any meeting properly warned for the purpose. Sec. 559, R. L.

VI. The bill of exceptions contains a statement as follows:

"It further appeared that the large boarding house, just below the court house, worth $5,000 or $6,000, was deeded several years ago to Johnsbury Academy; that in 1882, 1883 and 1884 this property, or a part of it, was rented for a boarding house, academy, and other boarders; a part occupied by one of the professors of the academy; that the rent or income from said property was used for general expenses of said academy; that the 'club' house, just back of the academy, and worth several thousand dollars, was in 1882, 1883 and 1884, omitted from the list as exempt. This 'club' house was partly rented and a part occupied by a club of scholars, who take their meals there and lodge in the 'South Hall' just below; that the rent is used for general expenses of the academy. Lower down Main Street the Warner house stands; also taken out of list in 1884 by the listers. This property was bought by the St. Johnsbury Academy in November, 1883, for $7,000. The property, since the purchase, has brought the academy no rent. The only proof as to this property was that one of the trustees of the academy said they intended to use it as a residence for the principal of the academy. It has not in fact been so used, or used at all, but has been kept as a part of the academy property, bought with the fund of the academy, which fund was a gift for the purposes of education. The court, against the plaintiff's exception, ruled that this Warner place, club house, and the boarding house, were properly omitted from the list, and were exempt as a matter of law upon the facts stated."

The plaintiff contends that this was error, because the St. Johnsbury Academy is a private, and not a public corporation.

Section 270, R. L., is in part this: "The following property shall be exempt from taxation.

"VI. Real or personal estate granted, sequestered, or used for public, pious or charitable uses;   *   *   *   and lands owned or leased by colleges, academies, or other public schools,"   *   *   *

Section 9, R. L.: "The word 'land,' 'lands,' and 'real estate,' shall include lands, tenements and hereditaments, and all rights thereto and interests therein."

There is no claim that the St. Johnsbury Academy is a misnomer, or that the institution by that name is not an academy

in the sense in which the term is generally used and understood. It is a chartered institution, and the charter conferred upon it " all the rights, privileges and powers belonging to similar corporations for the purpose of instructing pupils" in languages specified, the various sciences, and for improvement in general culture and in morals.

We do not think the words " or other public schools" were intended to be restrictive of what precedes. Colleges and academies are, in popular understanding, public institutions, although not public in the sense as applied to our common schools, which are supported by public taxation and are free to the public without charge to the pupils.

The word " public" in this statute, we hold, is not to be construed in the latter sense, but in the sense in which academies are regarded as public institutions. It is not restrictive of what precedes, but is explained thereby ; that is, public in the sense in which colleges and academies are. public.

No colleges or academies in this state are yet free to the public like our public schools ; neither are they public corporations ; therefore if the legislature intended by the phrase, " lands owned or leased by colleges, academies, or other public schools," only such colleges and academies as were free to the public without charge for tuition, or as were purely and technichally public corporations like municipalities, the legislation was simply idle. Neither do we think the word " public" in the *first* clause of the statute above quoted, viz., " Real and personal estate granted, sequestered, or used for public, pious or charitable uses," was intended in so restricted a sense as to leave a donation to this academy for its use in maintaining it as an institution of learning taxable. When a college or academy is incorporated wholly for the purposes of general education, and is so operated without any capital stock or purpose of profit, and tuition is charged only for its maintenance, then it is devoted to public use. It is private only in technical sense. Every donation not devoted to extension or improvement would naturally enable it to extend its beneficial use to

the public with less charge until in time it may become free. Its operation all the time is for the public weal, without personal advantage or profit to the corporators, except as they share with the whole public in the general advantage by promotion of education and good morals. It would be hard to say that money thus devoted was not given and used for "charitable uses." The popular misapprehension as to what constitutes a charity is certainly very great, if money given for education is not a charitable use of it.

This is not the case of a purely private school started under the name of a college or academy solely as a business enterprise for profit. Such schools may promote education and so serve a public advantage, but their primary and principal object is personal profit.

But this branch of this case comes under the second clause of the statute as quoted.

Objection is urged that the *use* of this property, although owned by the academy, was not such as is required to entitle it to exemption, and numerous cases are cited in support of the plaintiff's claim. In those cases the exemption law was very much restricted as compared with our statute. Our statute stands on the ground of ownership alone. There is no mention of use. In the cases cited there is language in the exempting statutes importing with more or less distinctness the element of direct use in carrying on the enterprise; and the decisions turned on that provision. I refer to a few only for illustration. In *Trustees of Phillips Exeter Academy* v. *Exeter*, 58 N. H. 306; s. c. 42 Am. Rep. 589, the exemption was granted to the plaintiffs as to "all lands, tenements and personal estate that shall be given to the trustees for the use of the academy." The building in question was used in part by the students as a boarding house and dormitory, and the remainder by the superintendant as a public house. The court held it was not exempt from taxation as land "for the use of the academy;" and the court said: "The fact that the legislature ignored *ownership* and made *use* the test, shows unmis-

takably that they recognized the essential distinction between the two, and fixed the latter, in preference to the former, as the basis of exemption."

In *Mullen* v. *Commissioners*, 85 Penn. St. 288; s. c. 27 Am. Rep. 650, it was held, under a statute exempting from taxation, " Churches, meeting houses, or other regular places of stated worship," * * * " in actual use and occupation for the purpose aforesaid," that the land on which a church was in process of erection was not exempt; the court giving force to the words importing actual *use* for *stated* worship.

In Ohio the statute exempted " all lots of-ground or land set apart for school houses, academies or colleges, with the buildings thereon occupied for those purposes." It was held in *Kendrick* v. *Farquhar*, 8 Ohio, 189, that a professor's house erected on the college grounds, and occupied by one of the faculty as a residence, was not exempt, The court say, " It must be shown that the building is occupied *for literary purposes.*"

But for another class of cases, when there is nothing in the statute restricting the exemption to property in special use, see *Wesleyan Academy* v. *Wilbraham*, 99 Mass. 599; *State* v. *Ross*, 4 Zab. 497, N. J. L. ; *The Trustees of Griswold College* v. *State*, 46 Iowa, 275; s. c. 26 Am. Rep. 138.

Although, under our statute, ownership is all that is expressly required, it is probable that the legislature did not intend to exempt property simply because owned by an academy. In construing statutes of exemption from taxation, regard must be had to the settled rule that they are to be construed most strongly against those who claim their benefit. The ownership must undoubtedly be, not for speculative purposes, but for the appropriate use and benefit of the institution as an academy or a college in carrying out the purposes of its incorporation.

When the corporation transfers a portion of its funds from its personal assets into a building for use in operating the school, it does not thereby increase its exemption from taxa-

tion. The fund was not taxable before. Its duty is to keep its funds invested. But this case does not present the question whether this academy could have exemption from taxation for a building bought wholly for investment, and to obtain income for its legitimate uses by renting. Although portions of two of the buildings in question were rented, we do not understand they were bought for that purpose; no such claim is made; but we understand they were obtained for actual use and convenience of the academy in carrying on the school, and the renting of a part was merely temporary and incidental. Nothing appears to the contrary.

In view of the difference between our statute and those in all the cases cited by the plaintiff, and many others that we have examined, where the claim of exemption was not sustained, we think the ruling of the County Court was not in conflict with authority, and we hold it was not error.

VII. A further statement was in the bill of exceptions as follows:

"In the spring of 1882, Henry Fairbanks purchased two parcels of lands on Eastern avenue—the 'Harroun' place and the 'Matthews & Pettengill' place. Mr. Fairbanks gave up the 'Harroun' place soon after to the use of the Y. M. C. Association, but rented the place till some time in the spring or summer of 1883 as a grocery and eating-house. It did not appear to what use he put the income or rent. In 1883 he removed both buildings and laid the foundation for the fine structure now on Eastern avenue. The Harroun property and the Matthews & Pettengill estate were worth, on April 1, 1883, from $4,000 to $5,000, and more in 1884, or as much. The title stood in Henry Fairbanks till after the building was completed in January, 1885, when said Fairbanks deeded the westerly half of the building to the Y. M. C. Association. He retained the easterly half for his own benefit and use. There was no proof of any trust on the record; but there was talk that when the building was completed it was to be given to the Y. M. C. Association. Both parcels were omitted from the list in 1883 and 1884. The court submitted to the jury to determine whether the listers in good

faith omitted this property from the list in 1883 and 1884, telling them that the grand list would not be invalid if they acted in good faith in omitting, although they made a mistake as to the law. He also told the jury that property used for public, pious or charitable uses was exempt from taxation, although the deed or record title might not show it was devoted to such use. This instruction was general, and applied to this and other property of same class. To this instruction plaintiffs excepted."

The first part of these instructions as to the good faith of the listers follows the recent decision in *Wilson* v. *Wheeler*, 55 Vt. 446. The objection now made is to the other holding. It is claimed that the word "used" in the clause, "real and personal estate granted, sequestered or used," applies to personal property alone; that the law is imperative that real estate shall be set in the list to the last owner thereof on the 1st day of April, etc.,—section 275, R. L.

That statute does not aid the plaintiff, because its language is "taxable real estate." The question here is whether this was taxable. No authority is cited and no reason is given why the word "used" should have the limited application stated, and we see none. Neither do we see why the statute does not apply to property actually used for the purposes named, although the deed does not show it was devoted to such use. We think the exemption must turn on the *fact* of grant, sequestration or use for "public, pious or charitable uses," and not on the language of the deed.

The question in the cases cited by the plaintiff was whether the *use* was *such* as to warrant exemption; but this bill of exceptions does not show what the instructions were on that point, or that any exception was taken thereto. Error cannot be presumed, but must be shown.

The exception was only to the instruction "that property used for public, pious or charitable uses is exempt from taxation, although the deed or record title might not show it was devoted to such uses." This, we think, was sound as a general proposition as applied to our statute. What the use must be

is another question, and is not before us on this point, although briefly considered on another point, *supra.* No question is made but that land devoted to the use of Y. M. C. Association is a pious use ; therefore, we have no occasion to pass on that point.

The statement in the exceptions in regard to the Kittredge and Music Hall places presents no different question.

VIII. One question in the case was as to the good · faith of the listers in making the grand list.

The plaintiff offered in evidence the inventories of E. & T. Fairbanks & Co. for 1883 and 1884 ; the inventories of the managers and principal owners of said company, to wit : Thaddeus, Horace, Flanklin and William P. Fairbanks ; also the inventories of several other prominent taxpayers in town,—Col. Frederick Fletcher, Henry Fairbanks and C. M. Stone. He offered them in evidence generally, and especially upon the claim that they have upon the good faith of the listers in making up the grand list, but he did not point out in what respect they bear upon the good faith of the listers in their action, nor did he point out or claim that the several persons whose inventories were offered were assessed otherwise than as required by said inventories. The inventories were excluded without examination by the court, to which he excepted ; neither the court nor opposing counsel requested the plaintiff to point out the particulars in which he claimed the inventories bore upon the good faith of the listers.

The above is all that the bill of exceptions contains on the point, except the testimony of one of the listers, that he had nothing to do about taking the inventories, and knew nothing about them except what they showed.

We cannot see how several of the inventories had any tend-. ency to show bad faith on the part of the listers ; but we think that one, and perhaps more than one, were admissible as bearing on that issue.

The question is whether it was error for the County Court to exclude them in view of the manner in which they were offered.

These were the inventories required by the Act of 1882. They contained twenty-two printed questions to be answered by the taxpayers. That act is entitled "An act revising, consolidating and amending the laws relating to the grand list," and contained thirty-seven sections. It was a comparatively recent statute when this case was tried, and had provoked more or less controversy as to its proper construction in reference to inventories, as this court has frequently had occasion to know. The inventories offered in evidence were offered generally, and especially on the question of good faith of listers, but how they or any one of them bore on that issue was not stated. No claim is now made that they were admissible generally, but only on the issue of good faith. The exceptions are not clear whether they were offered in gross or separately, and counsel disagree on that point. If offered all together the court was clearly not bound to go through them without the aid of suggestion as to defects. It would be impracticable, in the hurry of a jury trial, for the presiding judge to examine and dissect a bundle of papers to see whether they or any of them have a bearing on an issue. *Wright* v. *Williams*, 47 Vt. 222.

The same reason would apply to a single document, if its bearing on the point was not readily apparent, whether from its length or peculiar character. It would seem that such must have been the fact in this case, assuming that these inventories were offered one at a time, otherwise the counsel offering them would have stated the defects or peculiarities which made them admissible. The only excuse they now give is a statement in argument that they did not know because they had been deprived of an opportunity to examine them before. But they had the opportunity *then*, and presumably from their knowledge of their case, could much more readily discern the defects than the judge. We have examined these inventories with the aid of the criticisms now put upon them in argument, and while we see in this deliberate review that some of them might have been properly admitted in evidence, we as plainly

see that their admissibility would not be readily apparent to the court without suggestion of defects. They were offered for a collateral bearing, which they could have only by reason of something wrong about them. They were voluminous, and their correctness was dependent upon compliance with a recent, long, and somewhat complicated statute. Counsel were not deprived of an opportunity to examine them and point out defects, but neglected to do so. Under these circumstances we do not think it was fatal error for the court to exclude them. It was the fault of counsel in not doing their part towards getting a correct ruling on the merits.

IX. The County Court held that the property of the St. Johnsbury Aqueduct Company was in its nature real property, and was properly so treated by the listers, to which the plaintiff excepted.

This company was a corporation, and owned ponds and springs in Waterford some four miles from St. Johnsbury, and owned an aqueduct made of large iron pipes, by which the water was brought into its reservoir in St. Johnsbury. This aqueduct was partly in the highway and partly in fields of various owners. It did not appear what its rights were under its charter, as that was not produced, but the exceptions state that there was evidence tending to show it exercised the right of eminent domain. This exception was but slightly alluded to in the brief or argument of the plaintiff's counsel. They simply say this : " The property in the pipes was personal merely," and cited *Commonwealth* v. *Gas-Light Co.* 12 Allen, 75, and *Memphis Gas-Light Co.* v. *State*, 6 Cold. 310. The latter case I have not seen. The former does not support the claim, but so far as it bears on the proposition its force is the reverse. Following the treatment of the subject given by counsel, we hold, without further discussion, that the ruling of the County Court was correct.

X. The listers testified they appraised all the real and personal estate of the Ely Fork and Hoe Co., a corporation, and of all the corporations; deducted from the personal property

the debts they were owing, and set the balance of personal and all real estate in the list of said corporations ; and that was the way they understood the law required ; and that the balance of the value of the stock above the property thus taxed to the corporation was to be set to the stockholders, if there was any balance, but that they found no balance in the case of Ely Hoe and Fork Co. ; that the property taxed covered the entire property represented by the stock of the company.　They also testified that they understood that the property assessed by them to E. & T. Fairbanks & Co. taxed in this State and its property out of the State, taxed where situated to the corporation, was the entire property of the corporation which was represented by its stock, and for this reason they did not tax the stock of either corporation to the stockholders ; as they found no value in such stock to be taxed to said stockholders.

The court told the jury that if they found all the property represented by the stock of said corporations was taxed in this State or elsewhere, this view of the law taken by listers was the correct view, and there would be no balance to tax to the stockholders of the corporations ; to which the plaintiff excepted.

We think this instruction was in accordance with the provision of section 288, R. L., and was correct.

XI. It appeared that at the time of sale of said bank stock by defendant, all four shares were sold together.　Plaintiff's evidence tended to show such sale was without his assent ; defendant's evidence the contrary.

Mr. Willard, the plaintiff, testified that Judge POLAND was requested by him to bid off and pay for the shares sold, and for no other purpose.

The defendant was asked what occurred between him and Judge POLAND after the sale of the stock, and after Mr. Willard had gone away, but while Judge POLAND was paying for stock.

Defendant was asked : " In what capacity did Judge POLAND claim he was acting, in the business you did with him relating

Willard *v.* Pike.

to the sale of stock, the payment for the stock, of the prceeds of sale and repayment of surplus?"

Plaintiff objected, but witness was allowed to state, "He claimed to be acting as agent for the plaintiff." To this the plaintiff excepted. The plaintiff's four shares of stock were transferred to Judge POLAND, who merely gave his check to Mr. Pike for taxes and costs of sale, some $192. The stock brought some $76 per share.

The only reason now given why this evidence should have been excluded is that it was with reference to Willard's assent to having the sale of the property separately. The exceptions fail to make this apparent.

We have passed upon all questions that were ruled upon in the trial court, to which our attention has been called, but have omitted to notice other points now argued, but which the bill of exceptions failed to show were passed upon in that court.

The only error found, to which exception was taken, was the ruling as to the legality of the annual meeting of the school district, when the defendant was elected collector of the district.

Judgment reversed, and cause remanded.