Bissell, J.,
delivered the opinion of the court.
This controversy between the Colorado Fuel & Iron Company and the Pueblo Water Company was heard on an agreed statement of facts. The district court entered judgment for the water company. As we understand the statement the legal question on which the appellant relies must be adversely decided. The fuel company insists that the property which was assessed and taxed as personalty was personal property, and that the grantees had no right to pay these taxes and withhold the amount from the promised consideration. It is insisted the taxes were not a lien at the date of the conveyance, and that we must decide when, and to what extent, taxes on personal property become a perpetual lien, and reaching the con *353 elusion that they were not a lien when the conveyance was executed, the company may recover. The question as to the date, time and circumstances under which taxes on personal property became a perpetual lien, has several times been suggested to the court, and thus far we have refused to decide it. We have done it in all cases for very patent reasons; in the first place, the question has never been directly presented; in the second, it is a matter of great importance respecting which there may be some doubt, and we prefer, if it be both legitimate and proper, to leave it to the decision of the supreme court. Counsel insists that the question is now before us, and that we are bound to decide it. We cannot concede it. As we read the stipulation the property is not thereby determined to be personalty, but in truth and in fact it is by its terms proven to be realty, and the question argued is neither necessarily nor directly presented.
On the 1st of May, 1890, the South Pueblo Water Company was the owner of a plant to supply water to portions of the city of Pueblo. It consisted of certain lands owned by the company on which the essential buildings were erected. Therein were certain machinery affixed to it, and some personal property used in and about it. Connected with it and extending therefrom were long lines of mains running along and under the soil of the streets, and constituting as a whole a water plant. The company did not prepare and return a statutory list or schedule, and the assessor listed or scheduled the property under his statutory authority. In this schedule the officer listed the real estate and improvements as realty, and valued it at $5,500. The balance of the property he listed at $35,000, putting it in the column devoted to personal or other property as contradistinguished from realty as the printed forms are arranged. The taxes ultimately levied by the board of county commissioners in the October following were $198.60 on the real estate and improvements, and $1,358.75 on the other property, making a total taxation of $1,559.35. The levy by the board was subsequent to the conveyance, which will now be stated. On the 20th of Au *354 gust, 1890, the South Pueblo Water Company sold to the Pueblo Water Company and conveyed by warranty deed its entire plant. The real estate was conveyed by proper description, and the balance of the plant was transferred by apt terms. The Pueblo Water Company paid all the agreed purchase price but $1,559.35. This amount they deducted and ultimately paid to the county treasurer for the taxes. Prior to the delivery of the deed the fuel company succeeded to the title of the South Pueblo Company, and was entitled to receive the consideration money. The dispute grew out of the retention of the amount of the taxes and the subsequent payment by the' purchaser. The fuel company insisted that the taxes were levied on the property as personalty, and that the grantor was not liable for them.
The fuel company admitted on the argument and in the brief that there is no question respecting the $198.60, assessed against the realty, and that the grantee had a right to retain that sum and pay the taxes because of the grantor’s liability under the statute to pay all taxes accruing between the 1st of May and the 30th of November following. This concession is of substantial aid to us in the decision because if the fuel company can make no claim as to these taxes, it must follow they can make no claim as to the other, if we determine that the property was in fact realty. The whole argument is based on the assumption that because the bulk of the plant was scheduled or listed by the assessor under the head of personal property and the stipulation or agreed statement recited that for the purposes of the case the taxes are to be regarded as a verity, and legally due and payable according to the law relating to taxes, the status and character of the property for the purposes of taxation is conclusively fixed and determined. We concede that the taxes were a verity and that they were legally due and payable, but this admission does not necessarily determine the property to be personally as contradistinguished from realty. Under the terms of the stipulation the taxes were payable according to the law relating to taxes. But the further and necessary part of the *355 premise that the listing of the property in the column devoted to personalty necessarily determines its character we cannot admit. We do not attempt to determine what would be the rights, or the duties, or the remedies of either the county or the owner in case of a conflict and the county should attempt to collect, nor whether the list or schedule, would conclude the county in respect to the remedies to which it might resort. As we view it this matter is not at all conclusive or determinative of this controversy or of the rights and obligations of these parties. Even if we should concede that under some circumstances the county would be estopped, it does not necessarily follow that this would be true as between the grantor and the grantee if the assessor failed of his duty or misconceived it and returned the property as personalty when in fact it was realty. This circumstance would not at all conclude the grantor or the grantee in a suit to determine who should pay the taxes. In such a suit it would be the subject-matter of proof and on the evidence the court would be compelled to determine what the property was in order to decide who was liable under a statute prescribing the levy and assessment and fixing the liability of the grantor and the grantee between certain dates and under differing circumstances. We do not accept appellant’s contention that the schedule is conclusive. But if we should concede it, we do not believe under the terms of the agreed statement that the question is so presented as to bind either the parties or the court. When we look at the statement we find the plant consisted of real estate with the buildings thereon and the machinery therein, and the mains laid through the district which the company supplied and some personal property. Some of the property was admittedly real estate, certain other of the property, to wit: the buildings and machinery would be real estate for the purposes of assessment. The mains laid through the streets might or might not be real estate. This would depend either on the legal definition or the terms of some statute if there was legislation on the subject. We find in the stipulation that all of the property other *356 than the land, except $500 worth which was conceded to be personalty, consisted of water mains, pipes, and hydrants laid in the public streets and alleys in the city of Pueblo and the city of Bessemer and the machinery connected with it and necessary to the operation of the plant. We then have under this stipulation the direct question presented to us, are these mains and pipes realty, considered either as parts of a water plant or as property belonging to the water company so situated and thus used. When we look at the law as it has been declared when an attempt has been made by the courts to determine what water mains are, we find this to he true. The courts regard mains and pipes either as a part of a general plant which is to be regarded as an entirety for purposes of taxation, or we find them declared to be realty under the particular statutes of the various states which prescribe the ways and means by which revenues by taxation are to be raised. In the latter case the courts resort to the statutes in order to determine whether the property is to be regarded as realty, and they likewise recur to the description of the property, its uses, and objects for the purposes of definition. In either event we should be bound to hold the water mains to be realty. The appellee has cited cases holding this doctrine and none to the contrary has been called to our attention by the appellant. We shall therefore accept them as expressive of the law and follow them to the logical conclusion. But we find a better reason than the authority of these cases to hold that these mains are realty for the purpose of taxation in the language of our own statute, which is broader, more exact and comprehensive in its terms than any statutes referred to in the opinions which will be cited. In our statutes concerning revenues (chapter 94, General Statutes of 1888, sec. 2830), there is a very complete definition of the term “ real estate ” as used in the revenue statutes. This chapter provides a complete scheme for the taxation of property. To avoid difficulties and contingencies between the government and its citizens respecting what is or is not realty, and what is or is not personalty, the statute has undertaken to define real es *357 tate. According to its terms it includes lands, mines, minerals and quarries, and certain rights and privileges appertaining to them, and third, “improvements.” The second subdivision is as follows: “ The term improvements includes first, all buildings, structures, fixtures and fences erected upon or affixed to land, whether title has been acquired to said land or not.” By the very terms of this section all fixtures are regarded as real estate, whether the title to the land is in the owner of the fixture or otherwise. This section is directly and distinctly applicable; it fully describes this property as realty because this property is of necessity included in the term “ improvements ” as defined by that section. The mains are fixtures. They are affixed to the land and they are taxable as realty being thus affixed, whether the title to the land be or be not in the company which owns the mains and operates the plant. Since by the statute then these mains are realty, and we are able to find within the terms of the agreed statement a description of this property which brings it exactly within'the terms of the statutory definition, we must of necessity hold that the mains were realty for the purpose of taxation, and that the grantor was therefore liable to pay the taxes which accrued and which the Pueblo Water Company paid because they accrued and were levied within the period during which the statute says the grantor shall be liable. Oskaloosa Water Co. v. Board of Equalization, 84 Iowa, 407; Inhabitants of Paris v. Norway Water Co., 85 Me. 330; The Tide Water Pipe Line Co. v. Berry, 53 N. J. Law, 212; Willard v. Pike, 59 Vt. 202; Hayes v. The New York Gold Mining Co., 2 Colo. 273; People v. Cassity, 46 N. Y. 46; The King v. The Brighton Gas, Light & Coke Co., 5 Barn. & Cress. 465; 11 Eng. Com. Law, 543.
This discussion determines the entire appeal with the single exception of the f500 worth of property conceded to be personalty according to the terms of the statement. Respecting it, it seems to he admitted that the Pueblo Water Company were not entitled to withhold so much of the consideration as would liquidate the taxes on that amount of property. We *358 shall therefore so far modify the judgment, which we presume may be done by computation and stipulation o^ counsel, as to finally determine in this court that as to that amount the plaintiffs were entitled to recover. With this slight modification, the judgment will be modified and affirmed.

Modified and affirmed.